**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA  DIVISION**

**SONY ROY, individually, and**
**SONY ROY and RAYMONDE L. ROY,**
**husband and wife,**

             **Plaintiffs,**

**v.**                                                                  **CASE NO.: 3:06cv95/MCR/EMT**

**BOARD OF COUNTY COMMISSIONERS**
**WALTON COUNTY, FLORIDA, et al.,**

             **Defendants.**[1]

_____/

## O R D E R

        This case involves the proposed development of property in Walton County, Florida, owned by plaintiffs Sony and Raymonde Roy ("the Roys" or "plaintiffs").[2]  Alleging that they have been prevented from fully developing the property by the discriminatory actions of the defendants, plaintiffs assert various constitutional and statutory violations for which they seek damages, a declaratory judgment, attorneys' fees, and other relief.  Pending are the defendants' motions to dismiss plaintiffs' third amended complaint, to which plaintiffs have responded.  For the reasons that follow, the motions to dismiss are GRANTED IN PART

---

        [1]  The style of the case identifies as defendants the Board of Commissioners of Walton County, Florida, or, alternatively, Kenneth Pridgen, Larry Jones, Rosier "Ro" Cuchens, Cindy Meadows, Scott Brannon, in their official capacities as Commissioners of Walton County; Pat Blackshear, individually; Kenneth C. Vogel, individually; Margaret "Meg" Nelson, f/k/a Margaret N. Stevenson, individually; and Charles A. Webb, III, individually.
        Since the original filing of plaintiffs' complaint, Rosier "Ro" Cuchens has been replaced on the Walton County Board of County Commissioners by Sara Commander.  In accordance with Fed. R. Civ. P. 25(d)(1), therefore, Ms. Commander is substituted for Commissioner Cuchens in this case pursuant to this Order.

        [2]  References to "Roy" in this order refer only to Sony Roy.

and DENIED IN PART, with leave being granted to plaintiffs to file a final amended complaint.

**Background**[3]

The Roys, who are residents of Georgia and citizens of the United States, are natives of Haiti and are of African descent. They own property in Walton County in an area that historically has been racially segregated. The Roys seek to build a subdivision on the property called "Chateaux de Paris." Roy has indicated that he intends to market homes in Chateaux de Paris substantially, but not exclusively, to members of the African-American community.

On May 4, 2004, Roy obtained a final development order for the property from Defendant Walton County Board of County Commissioners ("the County") for a seven parcel subdivision. The order permitted the construction of houses three storeys in height, ordinary utilities and roadway improvements, common areas, a front wall, and perimeter fencing. The Roys (and Chateaux de Paris, LLC, a Georgia development company working under a development agreement with the Roys) subsequently began construction.

Plaintiffs claim that the defendants have intentionally delayed and thwarted their efforts to develop the property. According to plaintiffs, during construction Defendants Kenneth C. Vogel ("Vogel") and Margaret "Meg" Nelson ("Nelson")[4] contacted Roy and informed him that his plan to build three storey homes was prohibited under a legal ruling in a case in which Nelson had been a party. The Roys later determined, however, that the case had been voluntarily dismissed with no judgment having been entered. Further, plaintiffs allege that on October 6, 2004, Defendant Charles C. Webb ("Webb")[5], submitted an email complaint to the County identifying ways in which the Roys' development failed

---

[3] Because this case comes before the court on defendants' motions to dismiss, the facts as stated in plaintiffs' well-pleaded complaint are taken as true. Stephens v. Dep't of Health and Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990).

[4] Defendants Vogel and Nelson are married and own property adjoining the plaintiffs' property. Vogel is also a member of the Walton County Board of Adjustment ("BOA").

[5] Defendant Webb is a resident of Walton County and a licensed general contractor.

to conform to the County's final development order.[6]  Plaintiffs maintain that as a result of Webb's complaint the County issued a stop work order, citing as the reason the Roys' failure to obtain a building permit for their wall construction.[7]  The Roys obtained a building permit for their proposed wall on October 21, 2004, and continued construction.

On or about December 15, 2004, a final inspection of the construction was performed and county staff approved the release of the Roys' letter of credit.  Roy then applied to the Walton County Planning Department for approval of his subdivision plat. Final plat approval by the County's Planning Department was scheduled for May 24, 2005. Roy then gave written notice on February 25, 2005, of his intent to continue wall construction around his development, to fence and gate the subdivision by placing fencing on top of the rear and side retaining walls, and to build the subdivision front wall.[8]

On May 11, 2005, county staff issued a second stop work order.  According to county officials, this second stop work order was based on Roy's failure to post the development order on-site and because the Roys did not have a building permit.[9]  The following day, attorney Kenneth Goldberg ("Goldberg") sent a written complaint to the County asserting that the Roys had violated five requirements of Walton County's Comprehensive Plan and Land Development Code ("LDC").[10]  Goldberg also complained

---

[6]  Plaintiffs also allege that prior to October 6, 2004, Webb took a number of actions to hinder the plaintiffs' development including making numerous complaints to the County about the Roys' development, confronting the Roys' engineer and contractor, and harassing Roy by telephone.  Plaintiffs allege that these actions were all taken after Webb learned that Roy intended to market properties in his development to successful black professionals.

[7]  The stop work order was allegedly issued the day following the County's receipt of the email from Webb.

[8]  Roy's notice stated that he was relying on assurances from Jim Harmon and Bill Bearden of the County's development inspection department that Roy could fence or wall his property up to the property line and replace any disturbed vegetation after construction.

[9]  Plaintiffs do not clarify how this building permit differs from the one they obtained on October 21, 2004.

[10]  Plaintiffs allege that in making this complaint and throughout the events in this case Goldberg was representing Defendants Webb, Nelson, and Vogel.
Goldberg was originally named as a defendant in this case.  On March 14, 2007, however, plaintiffs filed a Stipulation of Dismissal (doc. 41) voluntarily dismissing all claims against him.

that the Roys were in violation of the County's final development order. Following the issuance of the stop work order and the submission of Goldberg's complaint, county staff removed the Roys' plat application from the agenda of the Planning Department's May 24, 2005, meeting.  Roy inquired about this decision and was told by county staff that the County could not approve his plat application and could not keep the issue of the plat approval on the agenda.  He was also told that his plat application had been removed from consideration due to concern that Roy might abandon the project if the plat application were not approved, leaving the County to deal with the uncompleted wall.[11]

On June 3, 2005, Roy was advised by county planning staff that in order to remove the stop work order he would need to submit a variance petition to the Walton County Board of Adjustment ("BOA").  He filed this petition on June 21, 2005, and a hearing was conducted on September 22, 2005.  At the hearing, shortly after Roy began his presentation, he was interrupted by a member of the BOA so that a motion to dismiss the variance petition for lack of jurisdiction could be addressed.[12]  Finding that it lacked jurisdiction to hear the Roys' petition, the BOA granted the motion to dismiss and thus refused to hear Roy's presentation or otherwise consider his petition for variance.

During a recess of the BOA meeting, County Attorney David Hallman told Roy he would recommend that an estoppel letter be issued from the Planning Department for the Roys' nearly completed wall.[13]  The estoppel letter was issued by Defendant Pat Blackshear ("Blackshear"), Director of Planning and Zoning for the County, on November 3, 2005.  The letter stated that the County and its staff had made representations to Roy that he could build the development's front wall up to the property line.  Because these representations had been made prior to the construction of the front wall, the County concluded that Roy should be permitted to reasonably rely on them, and thus the County

---

[11]  According to plaintiffs, the removal of their plat application from the Department's agenda resulted in a two-month delay in its recording.

[12]  Plaintiffs allege that Goldberg filed the motion on September 20, 2005, and amended it on September 22, 2005, prior to the BOA meeting that day.

[13]  Plaintiffs' complaint does not clarify whether this conversation occurred before or after the BOA's decision to grant the motion to dismiss plaintiffs' variance petition.

would not enforce violations of the wall "as proposed."  The Roys did not receive the estoppel letter at the time of its issuance, however, as it was misdirected to an address in Pennsylvania.[14]  On December 19, 2005, Goldberg emailed Blackshear to contest the estoppel letter, based on his belief that Blackshear did not have the authority to issue the letter.[15]  Following this email, on December 20, 2005, another stop work order was issued and posted on the Roys' property.  In early January 2006, Roy received the estoppel letter and gave written notice to the County that he intended to rely on the letter.  On January 9, 2006, however, an amended notice of violation was issued and posted on the property.  This notice amended the May 11, 2005, stop work order.[16]  Roy scheduled a meeting with Blackshear for February 2, 2006, to discuss the stop work order and estoppel letter.

Blackshear and Roy's meeting on February 2, 2006, was attended by county staff, the county attorney, and Goldberg.  Roy expressed his concern that the County had acted contrary to the estoppel letter.  Blackshear explained that Goldberg had "verbally requested" an extension of time to appeal the estoppel letter which Blackshear had granted.[17]  Blackshear further informed Roy that the November 3rd estoppel letter was to be rescinded and that county staff would be preparing a new letter, which would be issued by counsel.[18]

On March 6, 2006, the Roys filed their initial complaint in this court and on March 21, 2006, they filed their first amended complaint, to which each of the defendants filed a motion to dismiss.  On March 20, 2007, the court entered an order granting in part and

---

[14]  Plaintiffs allege that they did not receive the letter until January 2006.

[15]  The Roys contend that an appeal of the estoppel letter should have been filed by December 4, 2005.

[16]  The bases for the January 9, 2006, amended notice of violation were the same as those for the stop work order of December 20, 2005: the Roys had cleared native vegetation from a Native Vegetation Preservation Zone and their wall violated the setback requirements in the Route 30A Scenic Corridor.

[17]  The Roys allege that they were never given notice of Goldberg's appeal or the opportunity to contest the appeal.  Further, they allege that no appeal was ever filed with the BOA.

[18]  The Roys allege that no new letter had been issued as of June 5, 2007, when they filed their third amended complaint in this case.

denying in part defendants' motions.  (Doc. 51).  Plaintiffs then filed a second amended complaint on April 9, 2007, to which each of the defendants filed a motion to dismiss. Before the court could rule on these motions, however, the plaintiffs sought and were granted leave to file a third amended complaint, which contains the following claims:[19]

Count I for abuse of process.

Count II for declaratory and injunctive relief,[20] alleging that the County violated plaintiffs' rights under the Fourteenth Amendment's Due Process Clause and Equal Protection Clause and for a violation of plaintiffs' right to petition for redress of grievances.

Count III, against all defendants, except for the County, for a violation of plaintiffs' right to make and enforce contracts under 42 U.S.C. § 1981.

Count IV, against all defendants, for a violation of plaintiffs' right to market and sell their property under 42 U.S.C. § 1982.

Count V, against Blackshear and the County, for a violation of plaintiffs' rights to equal protection and petition for redress of grievances, under 42 U.S.C. § 1983.

Count VI, against all defendants, for a violation of plaintiffs' rights under 42 U.S.C. § 1985, alleging that defendants conspired to violate plaintiffs' civil rights because of plaintiffs' race or national origin.

Count VII, against all defendants, for a violation of plaintiffs' rights under the Fair Housing Act (FHA), 42 U.S.C. § 3604.[21]

Each defendant has filed a motion to dismiss.

---

[19]   In their third amended complaint plaintiffs invoke the court's federal question and diversity jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332. They evidently present their constitutional claims pursuant to 42 U.S.C. § 1983; assert other civil rights claims under 42 U.S.C. §§ 1981, 1982, and 1985 as well as a claim under 42 U.S.C. § 3604, the Fair Housing Act; and they seek declaratory relief pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act.

[20]   Presumably, plaintiffs' claim for declaratory relief is brought pursuant to 28 U.S.C. § 2201 and their claim for injunctive relief is brought pursuant to 42 U.S.C. § 1983.

[21]   Plaintiff's initial and first amended complaints also asserted claims against Resort Development Corporation and Tranquil Shores Homeowners' Association, Inc.  These claims were omitted in plaintiffs' second amended complaint and neither entity is mentioned in the third amended complaint.  Thus, the court presumes plaintiffs do not intend to pursue a claim against either one and will no longer consider them parties to this action.

**Discussion**

Defendants seek to dismiss all of plaintiffs' claims for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept the material allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999).  To satisfy the pleading requirements of Fed.R.Civ.P. 8, a complaint must simply give the defendant fair notice of the plaintiff's claims and the grounds upon which they rest.  See Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged.[22]  See Swierkiewicz, 534 U.S. at 511(quoting Scheuer, 416 U.S. at 236); United States v. Baxter Int'l, Inc., 345 F.3d 866, 881 (11th Cir. 2003).

Until the recent Supreme Court decision in Bell Atlantic Corp. v. Twombly, 550 U.S. ____, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), courts routinely followed the rule that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that plaintiff could prove no set of facts in support of his claim which would entitle him to relief."  Conley, 355 U.S. at 45-46.  Rejecting a literal reading of the "no set of facts" rule, the Court held in Twombly that although a complaint need not plead "detailed factual allegations," in order to survive a motion to dismiss the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . "; in other words, the complaint must include "enough facts to state a claim to relief that is plausible on its face."  Twombly, 127 S.Ct. at 1964-65.  The Court further instructed that the "no set of facts" language was "best forgotten as an incomplete, negative gloss on an accepted

---

[22] As a motion to dismiss is not the appropriate stage to argue the merits of plaintiffs' contentions, this order will not address the defendants' arguments concerning the validity or error of the facts or claims as asserted in plaintiffs' complaint.

pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 1969.[23]

## I.  Count I - Abuse of Process

In order to state a claim for abuse of process under Florida law, a plaintiff must allege "the willful or intentional misuse of process" by the defendants "either for some wrongful and unlawful object or for some ulterior purpose not intended by the law to effect." Steinhilber v. Lamoree, 825 F.Supp. 1003, 1006 (S.D.Fla.1992) (citing Peckins v. Kaye, 443 So.2d 1025 (Fla.Dist.Ct.App.1983); Cline v. Flagler Sales Corp., 207 So.2d 709 (Fla.Dist.Ct.App.1968)).   "There is no abuse of process, however, when the process is used to accomplish the result for which it is created, regardless of an incidental or concurrent motive of spite or ulterior purpose."  Bothman v. Harrington, 458 So.2d 1163, 1169 (Fla. 3 DCA 1984) (citations omitted).

The only individual named in Count I is Goldberg, who is no longer a defendant in the case.  In response to Webb's motions to dismiss plaintiffs' second and third amended complaints, plaintiffs attempt to clarify that this count is asserted against Goldberg's alleged principals: Webb, Nelson, and Vogel.   On a motion to dismiss, however, the court is confined to the four corners of the complaint, which currently fail to provide the defendants with sufficient notice of whether this claim is asserted against them.[24]  See Brooks v. Blue Cross and Blue Shield of Fla., 116 F.3d 1364, 1368-1369 (11th Cir. 1997) (citing 5 Charles A. Wright & Arthur Miller, Federal Practice and Procedure § 1356 at 590-92 (1969)); see

---

[23] In considering whether a plaintiff's complaint has sufficiently stated a claim on which relief may be granted, courts are to consider the plaintiff's claims as stated within the "four corners of the complaint." Brooks v. Blue Cross and Blue Shield of Fla., 116 F.3d 1364, 1368-1369 (11th Cir. 1997) (citations omitted). Courts may also consider any written instrument attached to the complaint as such attachments become part of the pleading "for all purposes," including the consideration of a motion to dismiss for failure to state a claim. Fed. R. Civ. P. 10(c); Griffin Industries, Inc., v. Irvin, 496 F.3d 11289 (11th Cir. 2007) (quoting Solis-Ramirez v. U.S. Dep't of Justice, 758 F.2d 1426, 1430 (11th Cir. 1985) (per curium)).

[24] Further confusing the issue of which defendants are being sued in Count I, plaintiffs stated in response to the County's motion to dismiss plaintiffs' second amended complaint that Count I was only being asserted against Goldberg.  In their response to the County's corrected motion to dismiss plaintiffs' third amended complaint, plaintiffs did not specifically address this issue and instead incorporated the arguments they had made in response to the County's motion to dismiss plaintiffs' second amended complaint.

also GJR Invs., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1368 (11th Cir. 1998) (finding that plaintiff's attempt to remedy a defect in the complaint with argument in its brief was untimely as "a motion to dismiss attacks a complaint on its face" and as the defect existed on the plain face of the complaint, later argument in briefing could not remedy it). Thus, defendants' motions to dismiss Count I are granted and plaintiffs' claims in Count I are DISMISSED, without prejudice.

## II.  Count II - Declaratory and Injunctive Relief under the Fourteenth Amendment[25]

### A.  Due Process

The Due Process Clause of the Fourteenth Amendment provides that, "nor shall any State deprive any person of life, liberty, or property, without due process of law. . . ."  U.S. Const. Amend. XIV, § 1.  This Clause protects both procedural and substantive rights. McKinney v. Pate, 20 F.3d 1550, 1555 (11th Cir. 1994) (en banc).

### 1. Procedural Due Process

The guarantee of procedural due process is "meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." Arrington v. Helms, 438 F.3d 1336, 1347 (11th Cir. 2006) (internal quotation marks omitted) (quoting Carey v. Piphus, 435 U.S. 247, 259, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1978)).  In order to state a § 1983 procedural due process claim a plaintiff must allege three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." Id. (internal quotation marks omitted) (quoting Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir.2003)).  A procedural due process violation is not complete, however, "unless and until the State fails to provide due process."  McKinney, 20 F.3d at 1557 (internal quotation marks omitted) (citing Zinermon v. Burch, 494 U.S. 113, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990)).

---

[25] While the plaintiffs' third amended complaint contains language which can be read to assert a facial constitutional challenge to the Walton County LDC, plaintiffs have clarified that they are not asserting such a claim.  This language (in paragraphs 101 through 103, 105, and 107 of plaintiff's third amended complaint) should thus be deleted in any subsequently filed amended complaint.

In this case even assuming plaintiffs have sufficiently alleged the first two elements, they have not alleged that Walton County failed to provide constitutionally adequate procedures or that there was no state court recourse available to correct the County's actions.  "[T]he state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate fora-agencies, review boards, and state courts, before being subject to a claim alleging a procedural due process violation." Mickens v. Tenth Judicial Circuit, 181 Fed.Appx. 865, 877 (11th Cir. 2006) (citing Horton v. Board of County Com'rs of Flagler County, 202 F.3d 1297 (11th Cir. 2000)).  Plaintiffs have not alleged the absence of a procedure at the county level by which they could challenge Blackshear's decision to rescind the estoppel letter or the issuance of the stop work orders.  Further, plaintiffs have not alleged an inability to challenge the County's decisions in state court.   Because plaintiffs have failed to sufficiently allege a constitutionally inadequate process by which they could challenge the County's actions, the County's motion to dismiss the plaintiffs' claim for a violation of their procedural due process rights is GRANTED and plaintiffs' claim is DISMISSED without prejudice.[26]

## 2.  Substantive Due Process

In addition to procedural protections, the Due Process Clause also protects "those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" McKinney, 20 F.3d at 1556 (quoting Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937)).  Its substantive protections have been found to encompass two main categories of rights.  Id.  First, the Due Process Clause incorporates most of the rights protected by the Bill of Rights and protects those rights from "infringement by State and local governments."  Pettco Enters., Inc. v. White, 896 F.Supp.

---

[26] Contrary to plaintiffs' argument in response to the County's motion to dismiss, the requirement that plaintiffs allege a constitutionally inadequate process is not based on either ripeness or exhaustion principles, but rather "on a recognition that the process a state provides is not only that employed by the board, agency, or other governmental entity whose action is in question, but also includes the remedial process state courts would provide if asked."  Horton v. Board of County Com'rs of Flagler County, 202 F.3d 1297, 1300 (11th Cir. 2000) (quoting McKinney, F.3d at 1561-65).  If the state provides such a remedial process, "there is no federal procedural due process violation regardless of whether the plaintiff has taken advantage of the state remedy or attempted to do so."  Id.

1137, 1146 (M.D. Ala. 1995) (citing <u>Zinermon</u>, 494 U.S. at 125).  Second, it "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." <u>Id.</u> at 1146-1147 (quoting <u>Daniels v. Williams</u>, 474 U.S. 327, 331, 106 S.Ct. 662, 665 88 L.Ed.2d 662 (1986)).

In this case plaintiffs only assert a claim under the first of these categories of protected rights.  They assert that the underlying fundamental right infringed by the County is their First Amendment right to petition for redress of grievances.  "Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior," however, "that Amendment, not the more generalized notion of substantive due process must be the guide for analyzing such a claim." <u>Albright v. Oliver</u>, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Accordingly, while the Fourteenth Amendment's substantive due process component is the vehicle by which the plaintiffs' right to petition for redress of grievances under the First Amendment is incorporated and enforced against the states, any claim for a violation of plaintiffs' right to petition for redress of grievances should be brought under that clause of the First Amendment.  <u>See</u>, <u>e.g.</u>, <u>Gilder-Lucas v. Elmore County Bd of Educ.</u>, 399 F.Supp.2d 1267, 1272 (M.D. Ala. 2005).  It is not necessary to assert a separate claim under the Fourteenth Amendment's substantive due process component.[27]   <u>Id.</u> Accordingly, the County's motion to dismiss is GRANTED and this claim is DISMISSED with prejudice.

### B.  Equal Protection

To state a claim under the Equal Protection Clause of the Fourteenth Amendment a plaintiff must allege that (1) he was treated differently from similarly situated persons and (2) the defendants unequally applied the laws for the purpose of discriminating against the plaintiff.  <u>GJR</u>, 132 F.3d at 1367 (11th Cir. 1998) (citing <u>Snowden v. Hughes</u>, 321 U.S. 1, 6, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944); <u>Strickland v. Alderman</u>, 74 F.3d 260, 264 & n.4

---

[27] Plaintiffs here have in fact filed a separate claim for a violation of their right to petition for redress of grievances under the First Amendment.  <u>See</u> Section II.C, <u>infra</u>.

(11th Cir. 1996)).  The similarly situated person and the plaintiff must be "prima facie identical in all relevant respects."  Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1314 (11th Cir. 2006).  Also, the discrimination must be based on a racially discriminatory intent or purpose.  Jackson v. City of Auburn, Ala., 41 F.Supp.2d 1300, 1310 (M.D. Ala. 1999) (quoting Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977).  A plaintiff making an equal protection challenge may properly allege discriminatory intent by showing "a clear pattern of disparate impact, unexplainable on grounds other than race; the historical background of the challenged decision or the specific events leading up to the decision; procedural or substantive departures from the norm; and the legislative or administrative history of the challenged statute."  Parks v. City of Warner Robins, Ga., 43 F.3d 609, 617 (11th Cir. 1995) (citing Arlington Heights, 429 U.S. at 266-68).  A plaintiff, however, may not make out a claim for an equal protection violation "solely because it results in a racially disproportionate impact." Arlington Heights, 429 U.S. at 264-65.  In the end, however, discriminatory intent or purpose does not have to be the "dominant" or "primary" purpose of defendants' actions, but only a "motivating" factor.  Id. at 265-266.

        In this case plaintiffs' claim must be dismissed as they have again failed to allege that they were treated differently from another similarly situated individual.  Plaintiffs concede in their complaint that none of the fifteen variances considered by the County BOA from 2004 through 2006 pertained to property located in the Highway 30A Scenic Corridor.  While plaintiffs argue that the BOA's approval of a front setback variance for at least one white man in the area below Highway 98 in Walton County satisfies the similarly situated requirement, they do not allege that this individual's property was similarly located in a "scenic corridor" and thus that his variance petition was subject to the same considerations and requirements as was their's.  The allegations in Count II thus are insufficient to establish that the alleged similarly situated individual was "prima facie identical in all relevant respects."  Campbell, 434 F.3d at 1314; see also Griffin Industries v. Irvin, 496 F.3d 1189, 1204, 1207 (11th Cir. 2007) (holding that plaintiffs may not rely on broad generalities in identifying a similarly situated comparator, but rather the "similarly

situated" requirement must be applied "with rigor") (citations omitted).   Because an allegation that defendants treated a dissimilarly situated individual differently does not constitute a violation of the Equal Protection Clause,  <u>Campbell</u>, 434 F.3d at 1314 (quoting <u>E & T Realty v. Strickland</u>, 830 F.2d 1107, 1109 (11th Cir. 1987)), the County's motion to dismiss is GRANTED and plaintiffs' claim is DISMISSED with prejudice.[28]   (<u>See also</u> section V and VII, <u>infra</u>).

### C.  Petition for Redress of Grievances

The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances."[29]  This right includes the right of every citizen to access to the courts. <u>California Motor Transport Co. v. Trucking Unlimited</u>, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972).  The clause also guarantees "the right to petition for redress of grievances, through available procedures, any department of the government, including state administrative agencies." <u>Gillard v. Norris</u>, 857 F.2d 1095, 1101 (6th Cir. 1988) (citing <u>Gearhart v. Thorn</u>, 768 F.2d 1072 (9th Cir.1985)).  To state a claim for a violation of this right, plaintiffs must allege that the procedures available to challenge the County's actions were constitutionally inadequate. <u>See</u>, <u>e.g.</u>, <u>Jackson v. City of Columbus</u>, 194 F.3d 737, 748-749 (6th Cir. 1999), <u>overruled on other grounds</u> <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 510 n. 2, 515, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); <u>Swekel v. City of River Rouge</u>, 119 F.3d 1259, 1265 (6th Cir. 1997) (Merritt, J. concurring).  Based on plaintiffs' failure to sufficiently allege facts supporting this requirement, <u>see</u> Section II.A.1, <u>supra</u>, the County's motion to dismiss plaintiffs' claim for a violation of their right to petition

---

[28] Plaintiffs' claims requiring them to allege a similarly situated individual (in Counts II, V, and VII) are dismissed with prejudice because any amendment of these claims would be futile.  <u>See</u> <u>Mickens v. Tenth Judicial Circuit</u>, 181 Fed.Appx. 865, 875 (citing <u>Hall v. United Ins. Co. of America</u>, 367 F.3d 1255, 1262 (11th Cir. 2004)).  Plaintiffs have conceded that from 2004 through 2006, there were no variance petitions, whether for front setbacks or otherwise, concerning property located in the Highway 30A Scenic Corridor.  Therefore, even if given leave to amend, plaintiffs will not be able to satisfy the requirements of these claims as they will not be able to identify a similarly situated individual who is "prima facie identical in all relevant respects." <u>Campbell</u>, 434 F.3d at 1314.

[29] The rights guaranteed in the First Amendment have been incorporated into the Fourteenth Amendment and held applicable against the states.  <u>See</u> <u>Waters v. Chaffin</u>, 684 F.2d 833, 836 n. 8 (11th Cir. 1982)

for redress of grievances is GRANTED and plaintiffs' claim is DISMISSED without prejudice.

**III.  Count III - 42 U.S.C. § 1981**[30]

Section 1981 provides that all persons, regardless of race, shall have the right to make and enforce contracts.  To establish a claim under § 1981 a plaintiff must allege that (1) he is a member of a racial minority, (2) the defendants alleged acted with intent to discriminate against him based on his race, and (3) the defendants' discrimination concerned one or more of the activities enumerated in § 1981.  Harry v. Marchant, 237 F.3d 1315, 1322 (11th Cir. 2001), vacated en banc, 259 F.3d 1310 (11th Cir. 2001), reinstated en banc, 291 F.3d 767 (11th Cir. 2002) (citing Green v. State Bar of Texas, 27 F.3d 1083, 1086 (5th Cir. 1994)); see also Lake Lucerne Civic Ass'n, Inc. v. Dolphin Stadium Corp., 801 F.Supp. 684, 702 (S.D. Fla. 1992) (citing Price v. Lockheed Space Operations Co., 856 F.2d 1503 (11th Cir. 1988)).[31]  Defendants can be liable for violations of § 1981 if they "authorized, directed, or participated in the alleged discriminatory conduct" or caused another party to infringe on a plaintiff's rights under that section.  Al-Khazraji v. Saint Francis College, 784 F.2d 505, 518 (3d. Cir. 1986).

In this case plaintiffs allege they are members of a racial minority and that the defendants acted with the intent to discriminate against them because of their race.  See Belfast v. Upsilon Chapter of Pi Kappa Alpha Fraternity at Auburn Univ., 267 F.Supp.2d 1139, 1145 (M.D. Ala. 2003) (explaining that at the motion to dismiss stage of litigation, "[p]laintiff cannot be expected to do more than allege racial motivation or bias" because "factual information relating to motive and purpose is peculiarly in the hands (and minds)

---

[30]  The plaintiffs' claim under § 1981 is brought against "all defendants."  Based on the court's previous order, which dismissed plaintiffs' § 1981 claim against the County with prejudice, the court reads plaintiffs' complaint to assert a § 1981 claim against the individual defendants only.

[31]  The County, Blackshear, and Vogel incorrectly rely on Patterson v. McLean, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) in support of their motion to dismiss.  Congress amended § 1981 in the Civil Rights Act of 1991 in response to Patterson, superceding that decision and clarifying that § 1981 applies to discriminatory actions occurring both during and after the formation of a contract.  Lauture v. International Business Machines Corp., 216 F.3d 258, 260-61 (2d Cir. 2000) (citing H.R. Rep. No. 102-40(II), at 2 (1991), reprinted in 1991 U.S.C.C.A.N. 694, 694-95).

of the Defendants"). Further, plaintiffs allege that Blackshear engaged in discriminatory actions which impaired the plaintiffs' ability to perform their contractual obligations. Finally, plaintiffs allege that Goldberg was the agent for Webb, Nelson, and Vogel.[32] Based on these allegations, a reasonable jury could find Webb, Nelson, and Vogel liable for the actions taken by Goldberg within his apparent authority.[33] Because plaintiffs have sufficiently alleged that Goldberg took actions on behalf of Webb, Nelson, and Vogel to infringe on plaintiffs' right to make and enforce contracts, they have sufficiently stated a claim against Webb, Nelson, and Vogel under § 1981 and thus the defendants' motions to dismiss plaintiffs' claims in Count III are DENIED.[34]

## IV.  Count IV - 42 U.S.C. § 1982

To state a claim under 42 U.S.C. § 1982 plaintiffs must "allege that their property interests were impaired on account of their race." Lake Lucerne Civic Ass'n, 801 F.Supp.

---

[32] Plaintiffs provide factual support for this allegation in their complaint. Plaintiffs allege that Goldberg has made explicit statements that he represented Webb. Further, plaintiffs allege that Goldberg has stated that he also represented unidentified owners of properties in the Gulf Winds subdivision. Plaintiffs believe that Nelson and Vogel were the unnamed owners whom Goldberg represented. This belief is based on Nelson and Vogel's prior alleged efforts to impede the Roys' development. It is also based on Roy's observation of a conversation between Nelson and Goldberg.

[33] Plaintiffs' claims against Webb, Nelson, and Vogel under 42 U.S.C. §§ 1981, 1982 and 3604 are, in effect, tort actions. See, e.g., Meyer v. Holley, 537 U.S. 280, 285-286, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003) (citations omitted); Dillon v. AFBIC Dev. Corp., 597 F.2d 556, 562 (5th Cir. 1979) (citations omitted); Al-Khazraji, 784 F.2d at 518 (citations omitted). "[W]hen Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." Meyer, 537 U.S. at 285. Thus, the rule of vicarious liability that principals are liable for the acts of their agents when the agents are acting within the scope of their authority or employment applies to these claims. See id. at 285-286.

[34] Defendants Webb, Nelson, and Vogel, in support of their motions to dismiss plaintiffs' claims under § 1981 and the other claims against them, also argue that plaintiffs' claims are intended to deter them from lawfully protesting the plaintiffs' development, which is conduct protected by the First Amendment. This argument raises the question of whether the defendants' activity is protected by the First Amendment's right to petition for redress of grievances under the Noerr-Pennington doctrine. See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); United Mine Workers v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626. However, because defendants did not expressly argue for dismissal under the Noerr-Pennington doctrine, the court will not consider the argument as a ground for dismissal in this order. Further, this defense is more appropriate at the summary judgment stage. See, e.g., Fox News Network, L.L.C. v. Time Warner, Inc., 962 F.Supp. 339, 345-346 (S.D.N.Y. 1997) ("The decision about whether the Noerr-Pennington doctrine applies should be left until after discovery, so as to more fully develop the underlying acts and possibly establish the exception.") (internal quotation marks and ellipses omitted) (quoting P. & B. Marina L.P. v. Logrande, 136 F.R.D. 50, 61 n.9 (E.D.N.Y. 1991)).

at 699-700 (citing City of Memphis v. Greene, 451 U.S. 100, 101, 101 S.Ct. 1584, 1596-1597, 67 L.Ed.2d 769 (1981); Terry Props., Inc. v. Standard Oil Co. (Ind.), 799 F.2d 1523 (11th Cir. 1986)).  The Supreme Court has construed § 1982 broadly "to protect not merely the enforceability of property interests acquired by black citizens but also their right to acquire and use property on an equal basis with white citizens."  City of Memphis, 451 U.S. at 120.  The protected property use rights are those included in the "bundle of rights for which an individual pays" when purchasing property.  Tillman v. Wheaton-Haven Recreation Ass'n, 410 U.S. 431, 437, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973).

Plaintiffs have alleged that they (the plaintiffs) are members of a racial minority.  Further, as to the individual defendants, plaintiffs have alleged that the defendants' discriminatory actions (as performed directly by Blackshear or indirectly by Webb, Nelson, and Vogel through Goldberg) impaired plaintiffs' ability to use, develop, and sell their property.  Finally, plaintiffs have alleged that in taking these actions, the individual defendants acted with discriminatory intent.  See Section III, supra.

As to the County defendant, plaintiffs have sufficiently alleged that the County's actions impaired their ability to use, develop, and sell their property.[35]  Plaintiffs also have sufficiently alleged that the County acted with discriminatory intent.  Plaintiffs' complaint alleges that the circumstances surrounding the County's decisions were suspect and that the County departed from its normal procedures.  See Hallmark Developers, Inc., v. Fulton County, Georgia, 466 F.3d 1276 (11th Cir. 2006) (relying on similar factors in determining whether a plaintiff has established discriminatory intent).  Specifically, plaintiffs allege that the circumstances surrounding the County's decisions to issue the stop work orders and dismiss the Roys' petition to the BOA were suspect because of the connection between these decisions and complaints made by Webb and Goldberg.  Further, plaintiffs allege that the County departed from normal procedures when it allowed Goldberg to untimely appeal the issuance of the estoppel letter and when it rescinded the estoppel letter.  Based

---

[35] Section 1982 provides for a cause of action for challenging a county's exclusionary land use restrictions.  Jackson v. Okaloosa County, Fla., 21 F.3d 1531, 1539 (11th Cir. 1994)

on these facts, plaintiffs have sufficiently alleged discriminatory intent.   Accordingly, defendants' motions to dismiss Count IV are DENIED.

## V.  Count V - 42 U.S.C. § 1983

Title 42 of the United States Code, section 1983 imposes civil liability on any person who, while acting under the color of state law, deprives another of his federal constitutional rights.   42 U.S.C. § 1983; <u>Conn v. Gabbert</u>, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399, 405 (1999).  To state a claim under § 1983 a plaintiff must allege that: (1) he was deprived of the "rights, privileges, or immunities" protected by the Constitution or federal law; and (2) the deprivation was caused by a person acting under color of law. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970).  In Section II, <u>supra</u>, the court addressed plaintiffs' demand for declaratory and injunctive relief for the alleged violation of their right to equal protection and petition for redress of grievances.  For the same reasons given there, the court GRANTS defendants' motion to dismiss and DISMISSES with prejudice plaintiffs' § 1983 damages claim for violation of their rights under the Equal Protection Clause, as set forth in Count V of the complaint and DISMISSES without prejudice plaintiffs' § 1983 damages claim for violation of their right to petition for redress of grievances as set forth in Count V.

## VI.  Count VI - 42 U.S.C. § 1985(3)

Count VI of the third amended complaint alleges that all of the defendants conspired to violate plaintiffs' civil rights based on plaintiffs' race or national origin.  In support of dismissal defendants argue that plaintiffs have failed to state a claim under § 1985(3) because plaintiffs have not sufficiently alleged "1) a conspiracy; 2) motivated by racial or other class-based invidious discrimination, 3) for the purpose of depriving directly or indirectly any person of equal protection of the laws of equal privileges and immunities under the laws, 4) some act committed in furtherance of the conspiracy and 5) an injury to the plaintiff's person or property or a deprivation of any right or privilege of a United States citizen."  <u>See</u> <u>Arnold v. Bd. of Educ. of Escambia County, Ala.</u>, 880 F.2d 305, 317 (11th Cir. 1989), <u>overruled on other grounds</u>, <u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)

(citing Griffin v. Breckenridge, 403 U.S. 88, 102-03, 91 S.Ct. 1790, 1798-99 29 L.Ed.2d 338 (1971); United Bhd. of Carpenters & Joiners, Local 610 v. Scott, 463 U.S. 825, 828-29, 103 S.Ct. 3352, 3355-56, 77 L.Ed.2d 1049 (1983); Quinones v. Szorc, 771 F.2d 289, 291 n. 1 (7th Cir.1985)).

As a threshold matter, any claim of conspiracy under § 1985(3) must allege an agreement between the defendants.  Sayles v. Commonwealth of Pennsylvania Dept. of Public Welfare, County of Monroe, 24 F.Supp.2d 393, 398 (M.D. Pa. 1997) (quoting Flanagan v. Shively, 783 F.Supp. 922, 928 (M.D. Pa. 1992), aff'd 980 F.2d 722 (3d Cir. 1992)).  This requires more than "[b]are conclusory allegations of 'conspiracy' or 'concerted action.'"  Id.  Instead, a plaintiff must "expressly allege an agreement or make averments of communication, consultation, cooperation or command from which such agreement can be inferred."  Id.  These averments "must be supported by facts bearing out the existence of the conspiracy."   Id.; see also Knowlton v. United States, 111 F.Supp.2d 1, 8 (D.D.C. 1999) (requiring that plaintiff allege a "meeting of the minds" between defendants) (citing Graves v. United States, 961 F.Supp. 314, 320-21 (D.D.C. 1997); Moss v. Perkins, 682 F.Supp. 395, 396 (N.D.Ill. 1988); Simms v. Reiner, 419 F.Supp. 468, 474 (N.D. Ill. 1976) (finding reliance on "entire cluster of events" was insufficient to establish a conspiracy)).  Second, any § 1985(3) conspiracy claim must allege facts showing how each defendant was involved in the conspiracy.  Eidson v. Arenas, 910 F.Supp. 609, 612-613 (M.D.Fla. 1995) (finding that plaintiffs' allegation that "Defendants, individually, jointly, collectively, and severally, conspired" was "conclusory and general" and "insufficient to state a cause of action against any of the Defendants").

Plaintiffs have sufficiently alleged a conspiracy claim under 42 U.S.C. § 1985(3).  They allege that an agreement existed between Webb, Nelson, and Vogel and support this by alleging that the defendants employed a common agent: Goldberg.  Plaintiffs also allege that these defendants had an agreement with Blackshear and other County employees to deprive the plaintiffs of their civil rights and impede the progress of their development and they allege that in doing so the defendants engaged in secret communications and meetings.  Plaintiffs' complaint also alleges the nature of each defendants' involvement in

the conspiracy, i.e. Blackshear as Planning Director for the County and Webb, Nelson, and Vogel as employing Goldberg for the purpose of unlawfully impeding the Roys' development.   Further, plaintiffs allege that the individual defendants and the County conspired for the purpose of preventing the Roys from developing and marketing their property because of the Roys' race.  Finally, plaintiffs allege a number of overt actions allegedly taken by the County in furtherance of the conspiracy, i.e. issuing multiple stop work orders, rescinding the estoppel letter, and imposing various delays and procedural irregularities.   Plaintiffs therefore have sufficiently stated a claim under 42 U.S.C. § 1985(3), and defendants' motions to dismiss plaintiffs' claims under that section are DENIED.

## VII.  Count VII - Fair Housing Act (FHA), 42 U.S.C. § 3604

Count VII of the third amended complaint alleges that each named defendant has infringed plaintiffs' rights under the Fair Housing Act (FHA), 42 U.S.C. §§ 3601, et seq. Section 3604 of the FHA makes it unlawful to "[t]o make unavailable or deny, a dwelling to any person because of race."   42 U.S.C. § 3604(a).   Section 3604 also prohibits individuals from discriminating "against any person . . . in the provision of services or facilities in connection [with the sale of a dwelling] because of race."  42 U.S.C. § 3604(b). Plaintiffs assert claims under both subsections (a) and (b).

### A.  42 U.S.C. § 3604(a)

The Eleventh Circuit has held that the discriminatory application of neutral zoning laws is actionable under § 3604(a). Hallmark Developers, 466 F.3d at 1283 (citing Jackson v. Okaloosa County, Fla., 21 F.3d 1531, 1542 n.17 (11th Cir. 1994)).  To state a claim under § 3604(a) a plaintiff must allege either disparate treatment or disparate impact.  Id. (citing Gamble v. City of Escondido, 104 F.3d 300, 304 (9th Cir. 1997); Leblanc-Sternberg v. Fletcher, 67 F.3d 412, 425 (2d Cir. 1995); Cavalieri Conway v. L. Butterman & Assoc., 992 F.Supp. 995, 1002 (N.D.Ill. 1998)).

An FHA claim under § 3604(a) for disparate treatment must allege that the defendants intentionally discriminated against the plaintiff on the basis of his race. Jackson v. City of Auburn, 41 F.Supp.2d at 1313 (citing Leblanc-Sternberg, 67 F.3d at 425).  This requires plaintiff to show that: (1) he is a member of a protected class, (2) he

applied for a zoning action; (3) the zoning action was denied despite his being qualified; and (4) the defendant approved the same zoning action for a similarly situated person, outside the protected class, relatively near the time the defendants denied the plaintiff's zoning action. See id. (citing Gamble, 104 F.3d at 305).

In this case plaintiffs have failed to sufficiently allege disparate treatment. As stated in Section II.B., supra, plaintiffs have not identified any similarly situated individual who was allowed to develop his property in violation of the set-back requirements of the LDC or who requested and received a variance from the BOA to develop his property in the Route 30A Scenic Corridor setback. Absent such allegations, plaintiffs cannot establish a claim for disparate treatment under § 3604(a). Thus, to the extent plaintiffs' claims under § 3604(a) are based on a theory of disparate treatment, defendants' motions to dismiss are GRANTED and plaintiffs' claims are DISMISSED with prejudice.

To establish a disparate impact claim a plaintiff must show one of two things: (1) the decision has a segregative effect or (2) the decision makes housing options significantly more restrictive for members of a protected group than for persons outside the group. Hallmark Developers, 466 F.3d at 1286 (quoting Hous., Investors, Inc. v. City of Clanton, Ala., 68 F.Supp.2d 1287, 1298 (M.D. Ala. 1999)); see also Jackson v. Okaloosa County, 21 F.3d at 1543 (recognizing that plaintiffs may sufficiently state a claim by alleging that the defendant's actions have a "harsher impact" on minorities than on whites); Fair Hous. in Huntington Comm., Inc. v. Town of Huntington, New York, 316 F.3d 357, 362 (2003) ("[P]laintiff must demonstrate that an outwardly neutral practice actually or predictably has a discriminatory effect; that is, has a signficantly adverse or disproportionate impact on minorities, or perpetuates segregation.") (citing Orange Lake Assocs., Inc. v. Kirkpatrick, 21 F.3d 1214, 12228 (2d Cir. 1994); Huntington Branch, N.A.A.C.P. v. Town of Huntington, 844 F.2d 926, 934, 937 (2d Cir. 1988)).

In this case plaintiffs allege that they intend to market their properties substantially, but not exclusively, to African-Americans and thus the defendants' obstruction has a harsher impact on African-Americans than whites. Plaintiffs also allege that by delaying the completion of their development, the defendants are perpetuating what has historically been a racially segregated area of Walton County. Based on these allegations, plaintiffs

have sufficiently alleged a disparate impact claim under § 3604(a) and the defendants' motions to dismiss are DENIED.

### B.  42 U.S.C. § 3604(b)

While subsection 3604(a) reaches any conduct that makes unavailable or denies a dwelling to a person because of his race, subsection 3604(b) is limited to claims of discrimination in the "terms, conditions, or privileges of sale or rental of a dwelling" or "in the provision of services . . . in connection therewith."  42 U.S.C. § 3604(b).  Under the "provision of services" prong of this subsection, plaintiffs must allege that they were discriminated against in the "services generally provided by governmental units such as police and fire protection or garbage collection." Southend Neighborhood Imp. Ass'n v. St. Clair Co., 743 F.2d 1207, 1210 (7th Cir. 1984).  Further, the "services" that are alleged to have been discriminatorily provided "must relate to the sale of a dwelling, and not just ownership of the dwelling." Edwards v. Media Borough Council, 430 F.Supp.2d 445. 452 n. 14 (E.D.Pa. 2006) (citing 24 C.F.R. § 100.65(a)).

In this case plaintiffs' claim is only based on the "provision of services" prong of § 3604(b).  Plaintiffs allege that the defendants violated this section "by procuring and imposing unreasonable and unlawful impediments, stoppages and delays on the required governmental land use actions, which were unwarranted by existing law, or as to which law itself had, or was applied with, the foreseeable discriminatory effect of continuing past residential racial segregation."[36]  Pls.' Compl. ¶ 163.  The granting of a variance to the plaintiffs, however, is not comparable to the provision of such services as police and fire protection, or garbage collection.  See Edwards, 430 F.Supp.2d at 453 and 452 n.14 (noting further that most challenges to zoning under the FHA allege violations under subsection 3604(a) rather than 3604(b)). Further, these "unlawful impediments, stoppages and delays" were not connected with the sale of the property to the plaintiffs and only affected their use of property previously purchased.  Because the plaintiffs have not sufficiently alleged a violation of this subsection, the defendants' motions to dismiss

---

[36]  Plaintiffs' complaint is replete with similar indecipherable language, which has made the court's task of reviewing the sufficiency of the allegations all the more difficult.

plaintiffs' claims under 42 U.S.C. § 3604(b) are GRANTED and the plaintiffs' claims under this section are DISMISSED with prejudice.[37]

**Conclusion**

For the foregoing reasons, the pending motions are denied in part and granted in part, with leave being afforded to plaintiffs to file a <u>final</u> amended complaint. This will be the last time plaintiffs are given leave to amend their complaint.[38] Further, the previously imposed stay of discovery is lifted. A final scheduling order addressing discovery and other matters will be entered separately.

Accordingly, it is ORDERED:

I.      The County, Blackshear, and Vogel's Corrected Motion to Dismiss Plaintiffs' Third Amended Complaint (doc. 103) is DENIED in part and GRANTED in part, as follows:

1)      As to Count I, the motion to dismiss is GRANTED and plaintiffs' claims are DISMISSED, without prejudice and with leave to file an amended complaint.

2)      As to Count II, the motion to dismiss plaintiffs' substantive due process and equal protection claims is GRANTED and plaintiffs' claims are DISMISSED, with prejudice; the motion to dismiss plaintiffs' procedural due process and petition for redress of grievances claims is GRANTED and plaintiffs' claims are DISMISSED, without prejudice and with leave to file an amended complaint.

3)      As to Count III (42 U.S.C. § 1981); Count IV (42 U.S.C. § 1982); and Count VI (42 U.S.C. § 1985), the motion to dismiss is DENIED.

4)      As to Count V (42 U.S.C. § 1983), the motion to dismiss plaintiffs' equal protection claim is GRANTED and plaintiffs' claims are DISMISSED, with prejudice; the motion to dismiss plaintiffs' petition for redress of grievances claim is GRANTED and plaintiffs' claims are DISMISSED, without prejudice and with leave to file an amended complaint.

---

[37] In the plaintiffs' first amended complaint, which was the subject of the court's previous order, the plaintiffs merely alleged a violation of 42 U.S.C. § 3604 and did not specify which subsection the plaintiffs claimed to have been violated. The court inferred from the complaint that the basis for the plaintiffs' claims was a violation of subsection 3604(a) and thus in its order did not address the viability of claims under subsection 3604(b).

[38] The court will not again engage in the frustrating and time-consuming effort of trying to discern who plaintiffs intend to sue, what claims they intend to assert, and under what theories they may proceed.

    5)      As to Count VII (42 U.S.C. § 3604(a)), the motion to dismiss plaintiffs' claims based on a theory of disparate treatment is GRANTED and plaintiffs' claims are DISMISSED with prejudice; the motion to dismiss plaintiffs' claims based on a theory of disparate impact is DENIED.  As to Count VII (42 U.S.C. § 3604(b)), the motion to dismiss plaintiffs' claims is GRANTED and plaintiffs' claims are DISMISSED with prejudice.

II.     Defendant Webb's Motion to Dismiss Plaintiffs' Third Amended Complaint (doc. 98) and Defendant Nelson's Corrected Motion to Dismiss Third Amended Complaint (doc. 104) are GRANTED in part and DENIED in part.

    1)      As to Count I, the motions to dismiss are GRANTED and plaintiffs' claims are DISMISSED, without prejudice and with leave to file an amended complaint.

    2)      As to Count III (42 U.S.C. § 1981); Count IV (42 U.S.C. § 1982); and Count VI (42 U.S.C. § 1985), the motions to dismiss are DENIED.

    3)      As to Count VII (42 U.S.C. § 3604(a)), the motions to dismiss plaintiffs' claims based on a theory of disparate treatment are GRANTED and plaintiffs' claims are DISMISSED with prejudice; the motions to dismiss plaintiffs' claims based on a theory of disparate impact are DENIED.  As to Count VII (42 U.S.C. § 3604(b)), the motions to dismiss plaintiffs' claims are GRANTED and plaintiffs' claims are DISMISSED with prejudice.

III.     Plaintiffs' fourth and final amended complaint must be filed within ten (10) days of the issuance of this order.  Plaintiffs are instructed to amend their complaint only to the extent necessary to address the issues raised in this order.  Defendants' responses to plaintiffs' fourth amended complaint must be filed within ten (10) days of the filing of plaintiffs' fourth amended complaint.  Motions to dismiss filed in response to plaintiffs' fourth amended complaint should relate only to the amended claims.

IV.     The stay on discovery is lifted and plaintiffs' Motion for Relief from Stay of Discovery, for Clarification and Memorandum in Support (doc. 119) and their Request for Rule 16(a) Interim Pretrial and Schedule Management Conference (doc. 147) are DENIED as moot.  A final scheduling order addressing discovery and other matters will be entered separately.

V.      Sara Commander, in her official capacity as a member of the Walton County Board of County Commissioners, is substituted for former Commissioner Cuchens as a defendant in this suit.

VI.     All claims against former defendants Resort Development Corporation and Tranquil Shores Homeowners' Association, Inc., are dismissed and both are dropped as parties to the case.

        **DONE and ORDERED** this 9th day of November, 2007.


                               s/ *M. Casey Rodgers*
                        **M. CASEY RODGERS**
                        **UNITED STATES DISTRICT JUDGE**