IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SONY ROY, individually, and
SONY ROY and RAYMONDE L. ROY,
husband and wife,
　　　　　　　Plaintiffs,

v.　　　　　　　　　　　　　　　　　　Case No.: 3:06cv95/MCR/EMT

BOARD OF COUNTY COMMISSIONERS,
WALTON COUNTY, FLORIDA, et al.,
　　　　　　　Defendants.
_____/

**ORDER, REPORT AND RECOMMENDATION**

　　　　This case was referred to the undersigned pursuant to Fed. R. Civ. P. 72(a) and N.D. Fla. Loc. R. 72.3 to determine the Defendants' entitlement to attorneys' fees and costs (Doc. 498). Pending are the "Motion to Tax Costs & Memoranda of Law" (Docs. 386 and 388; renewal notice at Doc. 485), and "Verified Motion to Tax Costs, Fees, and Sanctions & Memoranda of Law" (Doc. 387; renewal notice at Doc. 485) filed by Defendant Charles A. Webb, III ("Webb"). Also pending are the "Notice of Filing Bill of Costs, and Application for Taxation" (Doc. 385; renewal notice at Doc. 496), filed by Defendants Board of County Commissioners, Walton County, Florida ("the County"); Patricia Blackshear ("Blackshear"); and Kenneth C. Vogel ("Vogel") (collectively, "the County Defendants"), and the "Motion for Attorneys' Fees and Related Nontaxable Expenses" filed by the County Defendants and Defendant Margaret "Meg" Nelson ("Nelson") (Doc. 390; renewal notice at Doc. 496). The Roys, through their prior counsel, George R. Mead, II ("Mead"), filed a response in opposition to the motions for fees (Doc. 389). The court also permitted the Roys—after Mead's withdrawal from the case—to file a pro se response in opposition to the motions for fees and for costs (Docs. 512, 514). In addition, on June 9, 2011, the Roys filed a pro se "Motion to Reopen

for Falsehood and Oversights on the Record on March 31, 2009 Correction Rule 60 instead of Rule 74.06 in This Motion [sic]" (Doc. 515), to which the County Defendants/Nelson have responded (Doc. 520), as has Webb (Doc. 521).[1]

## BACKGROUND

This case involves real property located in Walton County, Florida, that was owned by the Roys, a black married couple originally from Haiti, who allege that through the discriminatory actions of Defendants they were prevented from fully developing the property into a subdivision. The Roys commenced this action in March 2006 through their then-counsel, Mead. Named as Defendants in that complaint were the County Defendants, Nelson, Webb, various homeowners associations, and Kenneth Goldberg ("Goldberg"), an attorney who had represented Webb (Doc. 1). Prior to the Defendants' filing any response, the Roys filed an eight-count amended complaint (Doc. 3),[2] which the Defendants moved to dismiss (*see* Docs. 5, 7, 8, and 9). By order dated March 20,

---

[1]  The Roys also seek to file a lengthy reply to the responses to their motion to reopen (Doc. 530). The court has reviewed the proposed reply. Because the facts and legal contentions are already adequately presented in the materials before the court and the reply would not aid the decisional process, the court denies the Roys' motion for leave to file a reply. In addition, the Roys recently—on September 22, 2011—filed a nineteen-page document (plus thirty-three pages of exhibits) titled "Motion in Support of Opposition to Motion By Defendants in Support of Motion to Reopen the Case Based on Rules 56, 60 and Other Powers to Grant Relief and for Finding New Evidences of Fraud Upon the Court per Supreme Court Rules [sic]," docketed by the clerk as a memorandum in support of the motion to reopen (Doc. 535). To the extent the Roys intended the late-filed document to be a supplemental memorandum in support of the motion to reopen, the Roys have not sought leave to file the document out-of-time. Having reviewed the "memorandum" and finding it would not aid the decisional process, the court sees no reason to grant such leave. To the extent the document is intended to supplement the proposed reply to the responses to reopen, in light of its rejection of the proposed reply and its determination that the document is not helpful, the court likewise does not accept and will not address the "supplement."

[2]  The amended complaint contained claims for declaratory and injunctive relief against the County for violations of the Fourteenth Amendment's Privileges and Immunities Clause, Procedural Due Process Clause, Substantive Due Process Clause, and Equal Protection Clause (Count I); a claim against each Defendant under 42 U.S.C. § 1981 for the infringement of the right to make and enforce contracts (Count II); a claim against all Defendants under 42 U.S.C. § 1982 for the violation of the right to market and sell property (Count III); a claim under 42 U.S.C. § 1983 against the County and Blackshear for violating the right to petition for redress of grievances and the right to equal protection (Count IV); a conspiracy claim under 42 U.S.C. § 1985 against all Defendants based on race or national origin (Count V); a claim that each of the Defendants violated the Fair Housing Act ("FHA"), 42 U.S.C. § 3604 (Count VI); and claims that the County had effected both a temporary and a permanent taking of the Roys' property in violation of the Fifth Amendment (Counts VII and VIII, respectively).

2007, the district court granted the motions to dismiss in part and denied them in part (Doc. 51).[3] As permitted by the court, the Roys filed a second amended complaint on April 9, 2007 (Doc. 53), which the named Defendants again moved to dismiss (*see* Docs. 62, 63, and 64).  Before the district court could rule on the motions, the Roys submitted a consented motion for leave to file a third amended complaint which listed seven counts and named as Defendants only the County Defendants, Nelson, and Webb (Docs. 87, 88)[4]; the district court granted this motion (Doc. 89), thus terminating the pending motions to dismiss.  Webb, the County Defendants, and Nelson moved to dismiss the third amended complaint (Docs. 98, 103, and 104).  On November 9, 2007, the district court granted their motions in part and denied them in part, giving the Roys one final opportunity to amend the claims that had been dismissed without prejudice (Doc. 156).[5]  On November 27, 2007,

---

[3]  More specifically, the district court made the following rulings as to the County's motion:
     (1) As to Counts III and VI, the motion to dismiss for lack of standing is DENIED.
     (2) As to Counts VII and VIII, the motion to dismiss is GRANTED and plaintiffs' claims are DISMISSED, without prejudice to renewal at such time as the claims may become ripe.
     (3) As to Count I, the motion to dismiss the facial and as applied challenges to the Walton County LDC [Land Development Code] based on the Privileges and Immunities Clause is GRANTED. Plaintiffs' claims are DISMISSED, without prejudice, and with leave to file an amended complaint. Plaintiffs' claim under 42 U.S.C. § 1983 is only dismissed as it pertains to plaintiffs' claim for a violation of their rights under the Equal Protection Clause.
     (4) As to Count I (Substantive Due Process Clause and Equal Protection Clause); Count III (42 U.S.C. § 1982); Count IV (42 U.S.C. § 1983)[footnote omitted]; Count V (42 U.S.C. § 1985); and Count VI (42 U.S.C. § 3604(a)), the motion to dismiss for failure to state a claim is GRANTED.  Plaintiffs['] claims are DISMISSED, without prejudice, and with leave to file an amended complaint.
     (5) As to defendant Vogel, the motion to dismiss the claims against this defendant in his individual capacity as a member of the BOA [Walton County Board of Adjustment] is GRANTED, and these claims are DISMISSED.
     (6) As to plaintiffs' claims against the County for punitive damages, the motion to dismiss is GRANTED, and these claims are DISMISSED.
(Doc. 51 at 24–25).
     In addition, the district court granted the motion to dismiss filed by Webb and two other Defendants, Resort Development Corporation and Tranquil Shores Homeowners' Association, Inc., ruling that "Plaintiffs' claims as to these defendants are DISMISSED, without prejudice, and with leave to file an amended complaint."  The court also granted Nelson's motion to dismiss, without prejudice, and with leave to file an amended complaint; denied as moot the motion to dismiss filed by Goldberg; and dismissed with prejudice Count II as to the County.

[4]  The third amended complaint was comprised of Count I (a new abuse of process claim) and Counts II–VII (essentially the former Counts I–VI, repleaded) (Doc. 88).  The takings claims—Counts VII and VIII of the prior complaint reviewed by the court—were omitted.

[5]  In its order dated November 9, 2007 (Doc. 156), the district court ruled as follows:
     (1) As to Count I, the motion to dismiss is GRANTED and plaintiffs' claims are DISMISSED, without prejudice and with leave to file an amended complaint.

the Roys filed a "Notice of Intent to Proceed on Third Amended Complaint," acknowledging the finality of all claims dismissed in the November 9, 2007, order and indicating they wished to stand on the remaining claims as pleaded (Doc. 167). The County Defendants, Nelson, and Webb each filed answers to the third amended complaint which addressed the surviving claims[6] (Docs. 174, 175 and 176). A period of discovery commenced. At the conclusion of discovery, Nelson, the County Defendants, and Webb moved for summary judgment (Docs. 250, 251, 252, and 254), and the Roys also moved for partial summary judgment (Doc. 259). On March 31, 2009, the district court entered an order granting the Defendants' motions, denying the Roys' cross-motion, and directing the clerk to enter judgment in favor of all Defendants (Doc. 380). Judgment was so entered, effective March 31, 2009 (Doc. 381).

_____

(2) As to Count II, the motion to dismiss plaintiffs' substantive due process and equal protection claims is GRANTED and plaintiffs' claims are DISMISSED, with prejudice; the motion to dismiss plaintiffs' procedural due process and petition for redress of grievances claims is GRANTED and plaintiffs' claims are DISMISSED, without prejudice and with leave to file an amended complaint.

(3) As to Count III (42 U.S.C. § 1981, against individual Defendants only); Count IV (42 U.S.C. § 1982); and Count VI (42 U.S.C. § 1985), the motion to dismiss is DENIED.

(4) As to Count V (42 U.S.C. § 1983), the motion to dismiss plaintiffs' equal protection claim is GRANTED and plaintiffs' claims are DISMISSED, with prejudice; the motion to dismiss plaintiffs' petition for redress of grievances claim is GRANTED and plaintiffs' claims are DISMISSED, without prejudice and with leave to file an amended complaint.

(5) As to Count VII (42 U.S.C. § 3604(a)), the motion to dismiss plaintiffs' claims based on a theory of disparate treatment is GRANTED and plaintiffs' claims are DISMISSED with prejudice; the motion to dismiss plaintiffs' claims based on a theory of disparate impact is DENIED. As to Count VII (42 U.S.C. § 3604(b)), the motion to dismiss plaintiffs' claims is GRANTED and plaintiffs' claims are DISMISSED with prejudice.

(Doc. 156 at 22–23).

In addition, the district court granted in part and denied in part the motions to dismiss filed by Webb and Nelson:

(1) As to Count I, the motions to dismiss are GRANTED and plaintiffs' claims are DISMISSED, without prejudice and with leave to file an amended complaint.

(2) As to Count III (42 U.S.C. § 1981); Count IV (42 U.S.C. § 1982); and Count VI (42 U.S.C. § 1985), the motions to dismiss are DENIED.

(3) As to Count VII (42 U.S.C. § 3604(a)), the motions to dismiss plaintiffs' claims based on a theory of disparate treatment are GRANTED and plaintiffs' claims are DISMISSED with prejudice; the motions to dismiss plaintiffs' claims based on a theory of disparate impact are DENIED. As to Count VII (42 U.S.C. § 3604(b)), the motions to dismiss plaintiffs' claims are GRANTED and plaintiffs' claims are DISMISSED with prejudice.

(*Id.* at 23).

6   These claims included Count III (42 U.S.C. §1981); Count IV (42 U.S.C. §1982), Count VI (42 U.S.C. §1985(3)); and Count VII (FHA) (disparate impact claim only).

Defendants timely filed notices of their bills of costs and applications for taxation (Docs. 385, 386), as well as motions for attorneys' fees and related nontaxable expenses (Docs. 390, 387). The Roys, through counsel, filed a response opposing the demands for fees (Doc. 389).[7]  On April 30, 2009, the Roys filed a pro se notice of appeal of the March 31, 2009, judgment (Doc. 391).  In light of the pending appeal, on May 12, 2009, the district court denied the pending motions for fees and costs, without prejudice to renewal by notice, should the appeal be resolved in Defendants' favor (Doc. 395).  In a decision issued December 22, 2010, the Eleventh Circuit affirmed the district court's judgment, and the mandate issued on March 18, 2011 (*see* Doc. 495).  After Defendants renewed their demands for attorneys' fees and costs (Docs. 485, 496),[8] the district court on April 4, 2011, referred this matter to the undersigned for a Report and Recommendation (Doc. 498).  On May 6, 2011, the district court granted Mead's motion to withdraw as attorney of record for the Roys, giving the Roys thirty days in which to obtain substitute counsel, and tolling all deadlines for thirty days (Docs. 503, 505).  No new counsel appeared for the Roys.  On June 6, 2011, the Roys filed a pro se response to the motions for fees and costs (Doc. 512).  Also, on June 9, 2011, the Roys filed a pro se motion to reopen this action (Doc. 530), to which Defendants responded (Docs. 520, 521).

**DISCUSSION**

**Motion to Reopen**

---

[7]  The court treats the April 27, 2009, response filed by Mead on the Roys' behalf (Doc. 389) as addressing both Webb's fees motion and the fees motion brought by the County Defendants and Nelson (*see* Doc. 501, this court's order of April 12, 2011).  Mead, while acting as the Roys' counsel, did not oppose the applications for costs (*see* Docs. 501, 502, and 504).  Since proceeding pro se, however, the Roys filed a motion voicing their opposition to any award of "attorney costs," which the court treats as a general response objecting to the motions for fees and costs (*see* Docs. 512, 514).

[8]  On January 28, 2011, the Roys, through Mead, filed a document titled "Memorandum in Opposition to Defendant Webb's Renewed Motion for Fees & Sanctions" (Doc. 488).  This document (which is largely devoted to challenging the district court's summary judgment order) in effect is an unauthorized supplement to the earlier response to Webb's motion for fees.  As stated in and for the reasons given in its April 12, 2011, order (Doc. 501), this court does not consider the January 28, 2011, response.

Case No.: 3:06cv95/MCR/EMT

The Roys' pro se motion to reopen this case, which cites Fed. R. Civ. P. 60, is somewhat difficult to follow.  It appears, however, that the Roys contend the County Defendants perpetrated a "blatant falsehood" or fraud on the court by denying that Walton County issued a stop-work order for the construction of a retaining wall on the Roys' property (Doc. 515 at 1).  Evidently in support, the Roys point to the Eleventh Circuit's reference in its order affirming judgment in Defendants' favor to "unfortunate confusion in the proceeding (with respect to the initial permission for the wall and later withdrawal thereof)" (Doc. 495 at 5–6).  According to the Roys, the "falsehood" concerning the stop-work order prejudiced them because the County actually did issue the order, which would have been sufficient to create a disputed issue of fact and thus avoid summary judgment (*id.* at 2).  Defendants oppose the motion (Docs. 520, 521).

Rule 60(b) permits a party to move for relief from a final judgment under certain specific circumstances.  These include: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or other misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, discharged, reversed or vacated; or (6) any other reason that justifies relief.  Fed. R. Civ. P. 60(b).  Further, "[a] motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) not more than one year after the entry of the judgment or order or date of the proceeding."  Fed. R. Civ. P. 60(c)(1).  Rule 60(b)(6), which is Rule 60's "catchall provision," authorizes relief "for any reason justifying relief from the operation of the judgment."  Fed. R. Civ. P. 60(b)(6); Cano v. Baker, 435 F.3d 1337, 1342 (11th Cir. 2006).  "[R]elief under this clause is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances," and which "absent such relief, an 'extreme' and 'unexpected' hardship will result."  Griffin v. Swim-Tech Corp., 722 F.2d 677, 680 (11th Cir. 1984) (citation and quotation omitted).  Even if the circumstances are shown to be "sufficiently extraordinary to warrant relief . . . whether to grant the requested relief is a matter for the district court's sound discretion."  Cano, 435 F.3d at 1342 (quotation and alteration omitted).  Moreover, an appeal of a ruling on a Rule 60(b) motion is narrow in scope, addressing only the propriety of the denial or grant of relief.  American Bankers Ins. Co. v. Northwestern Nat'l Ins. Co., 198 F.3d 1332, 1338 (11th Cir. 1999).  As a result, Rule 60(b) may not be used to challenge mistakes of law which could have been raised on direct appeal.  *Id.*

First, the Roys' motion to reopen the case was filed on June 9, 2011, which was well over one year after judgment was entered on March 31, 2009. Accordingly, any motion under Rule 60(b)(1), (2) or (3)—only the last of which three clauses appears to be relevant here—was untimely. *See* Fed. R. Civ. P. 60(c)(1). In any event, what the County Defendants actually stated at summary judgment was that, with respect to a rear retaining wall, the Roys failed to produce the stop-work order and "the County has no record of it." (Doc. 253 at 10). That the district court may have taken this rather ambiguous statement to mean that "the County denies having issued the stop-work order" (Doc. 380 at 3) matters not. The County Defendants' statement—while not a model of clarity—was not a lie or a misrepresentation: the County Defendants did not deny the County had issued the order, only that the County had no record of it. There was no fraud committed upon the court. Thus, even if the motion had been timely filed, the Roys would not be entitled to relief under clause (3). Nor are the Roys entitled to relief under clauses (4) or (5): the district court's judgment is not void, and it has not been reversed or vacated; indeed, it was affirmed on appeal. *See* Fed. R. Civ. P. 60(b)(4), (5).

With respect Rule 60(b)(6), the Roys' motion presents no "exceptional circumstances" that would warrant relief. *See* Griffin, 722 F.2d at 680. First, any contention by the Roys that the district court erred legally by granting summary judgment is not a proper foundation for a Rule 60(b) motion. *See* American Bankers Ins. Co., 198 F.3d at 1338; *see also* Jackson v. Seaboard Coast Line R.R. Co., 678 F.2d 992, 1021 (11th Cir. 1982) ("[A]n appeal from denial of Rule 60(b) relief does not bring up the underlying judgment for review. . . . An appellant may attack the underlying judgment only on direct appeal from the judgment itself.") (internal quotations and citations omitted). Nevertheless, the Roys' apparent assertion that summary judgment was improperly granted in light of the County Defendants' "false" statement to the court regarding the stop-work order is not supported by the record. As noted, the County Defendants did not make a false statement to the court concerning the stop-work order. Also, as the County Defendants note (Doc. 520 at 4), the Roys bore the burden of producing the stop-work order to support their allegation that the County issued the order (based on the failure to obtain a building permit) as a result of Webb's complaint. But the Roys failed to produce the evidence. Moreover, it is undisputed that the County issued a building permit authorizing the construction of the rear retaining wall within a few weeks

of the stop-work order's apparent issuance.  Thus any delay was relatively brief.  Finally, in its summary judgment order the district court noted that the front privacy wall was the focus of the Roys' complaints and that the stop-work order under discussion was not for that wall (Doc. 380 at 3, n.5).  Rather, as noted, the stop-work order was for a rear retaining wall.  Accordingly, even if it could be said that there was a disputed fact concerning the issuance of the stop-work order for the rear retaining wall, that fact was not material to the central issue involving the front privacy wall and would not have prevented summary judgment from being entered against the Roys.  Nothing the Roys have asserted or have pointed to in the record suggests they were denied a full and fair opportunity to litigate their claims or were prevented from seeking adequate redress.  *See* Harley v. Zoesch, 413 F.3d 866, 871 (8th Cir. 2005).  Indeed, as both the district and appellate courts made very clear, after a thorough and careful review of the evidence they found absolutely no evidence of intentional discrimination.  Accordingly, the Roys have failed to explain why they should be relieved of final judgment under Rule 60(b)(6) or how, absent such relief, an "extreme" or "unexpected" hardship will result.  Griffin, 722 F.2d at 680.

For all of the foregoing reasons, the Roys' motion to reopen should be denied.

## Motions for Fees and Nontaxable Costs

Citing Fed. R. Civ. P. 54(d), the County Defendants/Nelson seek an award of attorneys' fees and nontaxable costs pursuant to 42 U.S.C. § 1988 with respect to the Roys' 42 U.S.C. §§ 1981, 1982 and 1985 claims and pursuant to 42 U.S.C. § 3613(c)(2) with respect to their FHA claim.  In his motion for fees, Webb cites numerous statutes and provisions of federal and local rules in support of his claim for attorneys' fees and nontaxable costs, among them Fed. R. Civ. P. 54(d) and 42 U.S.C. § 1988.  Through Mead, the Roys contest any award of attorneys' fees, arguing that their claims were neither frivolous nor factually unsupported; rather, they were "simply supported by facts upon which the Court had a very poor opinion" (Doc. 389 at 3).  In their pro se response, the Roys ask the court to deny the Defendants' motions for attorneys' fees, contending their claims were wrongly dismissed and stating their intention to continue to pursue relief (Doc. 512 at 2).  According to the Roys, in light of "the veracity of Constitutional violations in this case and for good cause, we are confident that any reasonable person of our race, jury or grand jury would find most, if not all of the violations and falsehood we pointed out [sic]" (*id.*).

In accordance with the "American Rule," federal courts generally do not award attorneys' fees to prevailing parties.  Smalbein v. City of Daytona Beach, 353 F.3d 901, 904 (11th Cir. 2003). Where, however, Congress has given explicit statutory authority under fee-shifting statutes, attorneys' fees may be granted.  *Id.* (citing Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources, 532 U.S. 598, 602, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001)).  Two such fee-shifting statutes are 42 U.S.C. § 1988(b), and  42 U.S.C. § 3613(c)(2), both of which provide that the court, in its discretion, may allow the prevailing party reasonable attorneys' fees and costs.  *See* 42 U.S.C. § 1988(b); 42 U.S.C. § 3613(c)(2).[9]  The same substantive standards generally apply under both § 1988 and § 3613.  *See* Buckhannon Board & Care Home, Inc., 532 U.S. at 603 n.4 (statutory fee-shifting provisions from different statutes have been interpreted consistently); LeBlanc-Sternberg v. Fletcher, 143 F. 3d 748, 757 (2d Cir. 1998), citing Hensley v. Eckerhart, 461 U.S. 424, 433 n.7, 76 L. Ed. 2d 50 (1983) (stating that the same standards for awarding fees are "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party'"); *see also* Hall v. Lowder Realty Co., Inc., 263 F. Supp. 2d 1352, 1357–58 (M.D. Ala.  2003) (applying the definition of  prevailing party under §1988 to §3613(c)). Additionally, some "costs" that are not recoverable under 28 U.S.C. § 1920 may be included, as "reasonable out-of-pocket expenses of the kind normally charged to clients by attorneys[,] . . . as part of the reasonable attorney's fees awarded" under § 1988.  Pinkham v. Camex, Inc., 84 F.3d 292, 294–95 (8th Cir. 1996) (per curiam) (citations omitted); *see also* Dowdell v. City of Apopka, Florida, 698 F.2d 1181, 1188–89 (11th Cir. 1983) (stating that "[w]here cost-shifting is expressly authorized by statute, the traditional limitations of Rule 54(d) and 28 U.S.C. §§ 1920 and 1923(a) do not apply.").

A court may award attorney's fees under § 1988 (or, as in this case, § 3613(c)(2)) to a prevailing defendant if the court finds that the "action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."  Hughes v. Rowe, 449 U.S. 5, 14, 101

---

[9]  *See* 42 U.S.C. § 1988 ("In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. . . . "), and 42 U.S.C. § 3613(c)(2) ("In a civil action under subsection (a) of this section, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs. . . .").

S. Ct. 173, 178, 66 L. Ed. 2d 163 (1980) (quoting <u>Christiansburg Garment Co. v. EEOC</u>, 434 U.S. 412, 421, 98 S. Ct. 694, 700, 54 L. Ed. 2d 648 (1978)).  A claim may be found to be frivolous where, on summary judgment, defendants prevail and the plaintiffs have failed to introduce any evidence in support of their claims.  *See* <u>Head v. Medford</u>, 62 F.3d 351, 355 (11th Cir. 1995) (noting that findings of frivolity have generally been sustained when plaintiffs failed to introduce evidence supporting their claims), citing <u>Sullivan v. Sch. Bd. of Pinellas County</u>, 773 F.2d 1182, 1189 (11th Cir. 1985).  A case is not frivolous where the plaintiffs provide sufficient evidence to support their claims.  <u>Sullivan</u>, 773 F.2d at 1189.  Additionally, in <u>Sullivan</u> the Eleventh Circuit instructed that courts should consider several other factors in examining a claim for frivolity: "(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits."  *Id*.  The Eleventh Circuit explained that these guidelines are not hard and fast rules, however, and that frivolity determinations should be made on a case-by-case basis.  *Id.*

The determination of whether a party has prevailed has been described as "a clear, mechanical one; when a judgment is entered in favor of a party, it is the prevailing party."  <u>Allianz Versicherungs, AG v. Profreight Brokers, Inc.</u>, 99 Fed. App'x 10, 13 (5th Cir. 2004) (citations omitted).  With respect to this case, the district court found completely in Defendants' favor on the motions for summary judgment filed by the County Defendants, Nelson, and Webb, directing judgment in their favor.  Thus Defendants are the prevailing parties.  In finding for Defendants, the court concluded there was absolutely no evidence to support any of the Roys' claims.  More specifically, as to the Roys' claims pursuant to §§ 1981, 1982, and 1985, the court stated that it had "thoroughly reviewed the record in this case for any evidence of purposeful racial discrimination on the part of any defendant in this case.  There is none." (Doc. 380 at 12).  The court went on to state that the Roys had presented "absolutely no credible comparator evidence" and had "come forward with absolutely no credible direct or circumstantial evidence, or statistical proof, of any intentional discrimination whatsoever. . . .  The Roys' claims pursuant to § 1981 and § 1982 therefore are completely without merit." (*Id.* at 13).  With respect to their § 1985 conspiracy claim, the court found the Roys had "presented no credible factual evidence of an agreement" among the Defendants (*id.* at 13–14).  The district court also rejected the Roys' claim of a FHA violation with

disparate impact, specifically stating they had failed to state a prima facie case because they had not identified any facially neutral policy of the Defendants (*id.* at 15).  Moreover, "even if the analysis of the FHA claim proceeded in the absence of any identified policy, the Roys' FHA claim would still be subject to summary judgment . . . because the Roys have failed in their effort to show, by statistical proof, that the defendants' actions had a disparate impact on blacks in Walton County" (*id.*).

On appeal, the Eleventh Circuit affirmed the district court's disposition of the case, likewise finding no evidence of discrimination in the record (Doc. 495).  The appellate court stated:

> Obviously, discrimination would not be tolerated.  However, we have carefully reviewed the entire record and find no evidence of discrimination.  Although there was unfortunate confusion in the proceeding (with respect to the initial permission for the wall and later withdrawal thereof), there is no evidence that the confusion involved, resulted from, or was motivated by discrimination.  Indeed, our careful review of the record can discern no evidence of discrimination at all.  Plaintiffs have failed to adduce evidence creating a genuine issue of fact with respect to discrimination.

(Doc. 495 at 5–6).

Thus at summary judgment the district court found the Roys had presented no evidence to support their claims under 42 U.S.C. §1981, §1982, and §1985(3) or the FHA, findings with which the Eleventh Circuit agreed.[10]  As the district and appellate courts determined that the Roys provided no evidence whatsoever to support their claims, this court concludes that the claims may be deemed frivolous.  *See* Head, 62 F.3d at 355 (noting that findings of frivolity have generally been sustained when plaintiffs failed to introduce evidence supporting their claims).  The Sullivan factors also support a finding of frivolity.   As to the first factor, absent any credible comparator evidence—indeed any evidence of intentional discrimination—the Roys failed to establish a prima facie case as to their §1981 and §1982 claims (Doc. 380 at 12).  They likewise failed to establish a prima facie claim of conspiracy under §1985(3), as they failed to prove an underlying illegal act and "presented no credible factual evidence of an agreement" among the Defendants (*id.* at 13).

---

[10]  Contrary to the Roys' contention, "no evidence" means no evidence that satisfies the applicable standard of proof—not that the party failed to present any evidence whatsoever.  For example, in Beard v. Annis, 730 F.2d 741, 744 n.2 (11th Cir. 1984), in approving the district court's finding of frivolity the Eleventh Circuit rejected the plaintiff's assertion that his evidence proved a pattern or practice of discrimination.

Morever, the district court found that the Roys failed to establish a prima facie claim of an FHA violation, as they failed to identify any facially neutral policy of the Defendants (*id.* at 15). Next, as to the second <u>Sullivan</u> factor, that the County Defendants and Nelson did not offer to settle this case weighs in favor of finding that the claims against them were frivolous. Webb's settlement offer (*see* Doc. 384, Webb's offer of judgment in amount of $10,000.00), on the other hand, weighs against making a similar finding with respect to the claims against him. As to the third <u>Sullivan</u> factor, as discussed, all claims were disposed of prior to trial.[11] In sum, application of the three <u>Sullivan</u> factors to this case, in balance, weighs in favor of finding frivolity. Accordingly, based on the foregoing, this court concludes that the Roys' claims pursuant to 42 U.S.C. §1981, §1982, and §1985(3) and the FHA were frivolous.

In light of its conclusion that the Roys' claims were frivolous, this court recommends that the instant motions for attorneys' fees pursuant to 42 U.S.C. § 1988 (with respect to the claims under 42 U.S.C. § 1981, § 1982 and § 1985) filed by the prevailing parties—the County Defendants, Nelson, and Webb—be granted. Similarly, this court recommends that the County Defendants and Nelson's demand for attorneys' fees pursuant to 42 U.S.C. § 3613(c)(2) (with respect to the Roys' FHA claim) also be granted.[12] Should the district court adopt the undersigned's recommendation that the Roys be found liable for attorneys' fees, the parties should be directed to comply with N.D. Fla. Loc. R. 54.1(E) to determine the amount of fees and nontaxable costs to be awarded. *See* N.D. Fla. Loc. R. 54.1(D) (providing for bifurcated procedure for determining attorneys' fees; initial motion and response should address liability only and, if liability is found, the amount to be awarded

---

[11]  The fact that some of the Roys' claims survived the Defendants' motions to dismiss to be reviewed at summary judgment does not mean that those claims were not frivolous. At the motion-to-dismiss stage of the litigation, the district court was required to accept as true, and did accept as true, the Roys' well-pleaded factual allegations. The claims ultimately failed because the Roys did not introduce evidence supporting their allegations. *See* <u>Hutchinson v. Staton</u>, 994 F.2d 1076, 1080–81 (4th Cir. 1993) (affirming fee award to defendants where plaintiffs' claim survived motions for dismissal and summary judgment but was ultimately determined to be factually frivolous).

[12]  While Webb mentions 42 U.S.C. § 3604 in his motion for fees (Doc. 387 at 2), nowhere in the motion does he cite or rely on 42 U.S.C. § 3613(c)(2), which authorizes an award of attorneys' fees to a prevailing party on an FHA claim. Absent Webb's specific request for fees under the appropriate authority, this court recommends declining to award fees to Webb pursuant to 42 U.S.C. § 3613(c)(2) on the Roys' FHA claim.

shall be determined in subsequent proceedings).[13]   After such compliance, the undersigned will submit a Report and Recommendation to the district court regarding the amount of fees to be awarded.

**Motions for Sanctions**

The County Defendants and Nelson also seek to recover attorneys' fees and related nontaxable expenses from Mead, as a sanction, under 28 U.S.C. § 1927.  Webb likewise seeks sanctions against Mead pursuant to § 1927, as well as sanctions against the Roys and Mead (and Mead's law firm) pursuant to Fed. R. Civ. P. 11 and the court's inherent power.

28 U.S.C. § 1927

Title 28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  Because the provisions of § 1927 are "penal in nature [they] must be strictly construed."  Norelus v. Denny's, Inc., 628 F.3d 1270, 1281 (11th Cir. 2010) (citations and internal quotation marks omitted).   Under the plain language of the statute three factors must be present in order to justify an imposition of sanctions:   (1) an attorney must engage in "unreasonable and vexatious" conduct; (2) such "unreasonable and vexatious" conduct must "multipl[y] the proceedings"; and (3) the amount of the

---

[13]  Under 42 U.S.C. § 1988 (and, consequently, 42 U.S.C. § 3613(c)(2)), a losing civil rights plaintiff must answer for the conduct of his lawyer, and attorneys' fees, if awarded, are assessed against that plaintiff rather than against counsel. Durrett v. Jenkins Brickyard, Inc., 678 F.2d 911, 915–16 (11th Cir. 1982); see also Baker v. Alderman, 158 F.3d 516, 527 (11th Cir. 1998) ("Attorney's fees under § 1988 are assessed against losing parties, and not against counsel."); Santhuff v. Seitz, 385 F. App'x 939, 947 (11th Cir. 2010) ("[I]t is incorrect to hold counsel accountable for fees under § 1988.").  Thus the Roys, but not Mead, are subject to an assessment of fees pursuant to § 1988 and § 3613(c)(2).

The court notes the Roys' assertion in their response that they have been financially "ruined" by this litigation (Doc. 512 at 2).  The Roys have not supplied the court with any affidavits or other proof of their current financial status, but they are free to do so in the course of the second phase of the bifurcated proceedings if they wish.  They are advised that, before the amount of attorneys' fees to be assessed is determined, the ability to pay must be considered, provided information about this issue is properly presented.  See Baker, 158 F.3d at 528 (noting that the "law in this circuit is clear that ability to pay should be considered in the award of attorney's fees under § 1988").  Although a district court may reduce the award of attorneys' fees because of the inability to pay, "in no case may the district court refuse altogether to award attorney's fees to a prevailing . . . defendant because of the plaintiff's financial condition."  Durrett, 678 F.2d at 917 (finding "[a] fee must be assessed which will serve the deterrent purpose of the statute, and no fee will provide no deterrence").

sanction cannot exceed the costs occasioned by the objectionable conduct. *Id.* An attorney multiplies the proceedings unreasonably and vexatiously only when his conduct is "so egregious that it is 'tantamount to bad faith.'" Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1239 (11th Cir. 2007) (citation omitted). Bad faith is an objective standard which turns "not on the attorney's subjective intent, but on the attorney's objective conduct." *Id.* The conduct at issue should be compared with how a reasonable attorney would have acted under the circumstances. More particularly, "[t]he term 'unreasonably' necessarily connotes that the district court must compare the attorney's conduct against the conduct of a 'reasonable' attorney and make a judgment about whether the conduct was acceptable according to some objective standard. The term 'vexatiously' similarly requires an evaluation of the attorney's objective conduct." *Id.* at 1239–40; *see also* Amlong, 500 F.3d at 1240 (citing Black's Law Dictionary, (8th ed. 2004), for definition of "vexatious" (meaning "without reasonable or probable cause or excuse; harassing; annoying")). Neither negligent conduct, standing alone, nor lack of merit will support a finding of bad faith. *Id.* at 1241–42. Rather, the "attorney must knowingly or recklessly pursue a frivolous claim . . . ." *Id.* at 1242. Recklessness is "a gross deviation from conduct that might be reasonable in the circumstances." Schwartz v. Millon Air, Inc., 341 F.3d 1220, 1227 (11th Cir. 2003). "[O]bjectively reckless conduct is enough to warrant sanctions even if the attorney does not act knowingly and malevolently." Amlong, 500 F.3d at 1241. Nevertheless, the attorney's purpose or intent regarding the multiplication of the proceedings is not irrelevant. *Id.* "Although the attorney's objective conduct is the focus of the analysis, the attorney's subjective state of mind is frequently an important piece of the calculus, because a given act is more likely to fall outside the bounds of acceptable conduct and therefore be 'unreasonabl[e] and vexatious[ ]' if it is done with a malicious purpose or intent." *Id.*

Webb's brief argument in support of imposing § 1927 sanctions essentially is that the district court's summary judgment order supports them; additionally, sanctions are warranted based on "the years the Plaintiffs spent trying to plead viable causes of action, to no avail, and then pursuing their case in full bore during, through, and after depositions showing their Third Amended Complaint had no merit." (Doc. 387 at 10). The County Defendants and Nelson argue at length in support of their contention that § 1927 sanctions are appropriate in this case. In essence, they contend that Mead

conducted this litigation in objective bad faith and recklessly, with the result of unnecessarily protracting the proceedings (Doc. 390 at 12). According to Defendants, Mead should have realized either initially or, at the latest, at the close of discovery, that there was no evidence to support the claims asserted.[14] In response, Mead states that Defendants have identified no vexatious conduct in which he engaged or any causal connection to any multiplication of the proceedings; according to Mead, this case involved only an ordinary course of litigation, not any excess proceedings.

The district court concluded its summary judgment order with the following statement:

> In closing, the court feels compelled to make the following comments on the course of litigation and conduct of this case, which has now been pending on the court's docket for over three years. In fairness, the court acknowledges that some of the delay can be attributed to its heavy docket. Nevertheless, the court is also persuaded that counsel for plaintiff persisted in pursuing untenable legal theories and arguments based on unsupported facts long after it should have been apparent to him that any reasonable basis for proceeding with this case did not exist. This unfortunate conduct by plaintiffs' counsel resulted in the waste of scarce judicial resources, as well as the defendants' resources.

(Doc. 380 at 16–17).

The district court's statement effectively amounts to a finding that Mead, through his litigation conduct, needlessly multiplied the proceedings and did so unreasonably. Thus the question that must be considered here is whether Mead acted vexatiously in connection with his pursuit of frivolous claims.

The court first notes that Mead cannot be sanctioned under § 1927 for conduct related to the initiation of this action. *See* Macort v. Prem, Inc., 208 Fed. App'x 781 (11th Cir. 2006) (stating that based on its plain language, § 1927 applies to filings after the lawsuit has begun and thus does not

---

[14] Defendants cite numerous examples of Mead's unreasonable conduct in the prosecution of this case (*see* Doc. 390 at 13–17), among them that he continued to litigate after discovery failed to disclose any evidence of intentional discrimination (including no evidence that Defendants treated the Roys any differently than they had treated similarly situated non-minorities) and revealed that Goldberg only represented Webb (not Vogel or Nelson, neither of whom Webb even knew). Moreover, Defendants point to Mead's unreasonable reliance on evidence concerning Nelson, Vogel, and Blackshear that was objectively insufficient to show discriminatory intent; instead, the evidence suggested innocent conduct or conduct that showed non-discriminatory intent. Defendants also assert that in addition to being unreasonable in characterizing the facts, Mead was also unreasonable in interpreting the applicable law. They cite Mead's erroneous argument that, in light of certain census data, the Roys were not required to show a non-minority comparator to establish their § 1981 and § 1982 claims and his confusing statistical argument which lacked valid data; made unexplained, unwarranted assumptions; and made legally insufficient, speculative allegations of disparate impact.

apply to the filing of the complaint). Mead subsequently filed three amended complaints (only two of which the district court reviewed) that raised a litany of claims, the majority of which were disposed of on Defendants' motions to dismiss. More than a lack of merit, however, is required to impose § 1927 sanctions. *See* Schwartz, 341 F.3d at 1225. The record does not reflect that Mead recklessly pursued any of the dismissed claims or pursued them knowing they were legally frivolous; indeed, the district court dismissed many of the claims without prejudice, granting leave to amend.

Four of the Roys' claims survived the motion-to-dismiss phase of the litigation and proceeded to discovery and summary judgment. As Defendants submit, at least by the close of discovery a reasonable attorney should have been aware of the lack of evidence for these four claims. As previously noted, that Mead nevertheless continued to pursue these claims through summary judgment therefore was not reasonable. This court does not, however, perceive Mead's conduct in proceeding with the claims following discovery rather than dismissing them as being so egregious as to be vexatious. At summary judgment, among other efforts, Mead attempted to support the claims by making the assertion that, under the circumstances of this case, the Roys were not required to show a non-minority comparator (which the district court rejected as legally incorrect) and a statistical argument (which the district court rejected as being completely flawed). While Mead's efforts to salvage the claims were not successful, indeed could not succeed and fell woefully short of the mark in the attempt, in this court's view his continued pursuit of the claims through summary judgment was not reckless. To be sure, the conduct deviated from that which was "reasonable," but not to the extent the conduct was a "gross" deviation. Schwartz, 341 F.3d at 1227. This court believes the conduct may be viewed not as reckless but rather as zealous advocacy—albeit misinformed, misguided, and ineffectual advocacy. Accordingly, the undersigned concludes Mead's conduct at this stage of the proceedings was not so egregious as to be vexatious within the meaning of § 1927's high standard. *See* Amlong, 500 F.3d at 1242 (stating that an attorney's conduct "must be particularly egregious to warrant the imposition of sanctions," a

standard the court described as "high").[15]  Moreover, while the focus of the inquiry under § 1927 is on Mead's objective conduct, the court is aware of nothing in the record that indicates Mead acted with any subjective malicious purpose or intent to multiply the proceedings, nor do Defendants argue otherwise, which lends support to the conclusion that his actions were not vexatious. Amlong, 500 F.3d at 1241.

For the foregoing reasons, this court concludes that Mead's conduct, when viewed objectively, was not essentially equivalent to having acted in bad faith, thus warranting the imposition of sanctions for unreasonably and vexatiously multiplying the proceedings.[16]  The court therefore recommends that the motions for sanctions pursuant to 28 U.S.C. § 1927 filed by the County Defendants/Nelson and Webb be denied.

Rule 11 and the Court's Inherent Power

Webb also seeks sanctions pursuant to Fed. R. Civ. P. 11 and the court's inherent power. For the reasons that follow, the court recommends that both requests be denied.

First, Rule 11 provides that "[a] motion for sanctions must be made separately from any other motion." Fed. R. Civ. P. 11(c)(2).  Webb has not pointed the court to any such separate Rule 11 motion in the record.  Additionally, although the court summarily reviewed the extensive electronic docket (which currently contains five hundred thirty-five entries), it did not locate a separate motion filed by Webb that was devoted to the subject of Rule 11 sanctions.  Second, Rule 11 requires that the motion "be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."  In his instant motion, Webb does not inform the court as to whether, if a separate Rule 11 motion existed, he served it on the Roys,

---

[15]  Congress, in amending § 1927, intended to establish a stringent standard for judicial review of attorney misconduct under the statute.  In 1980, the House Report stated that:  "The high standard which must be met to trigger section 1927 insures that the provision will in no way dampen the legitimate zeal of an attorney in representing his client."  H. Rep. No. 1234, 96th Cong., 2d Sess. 8, reprinted in 1980 Code Cong. & Ad. News 2716, 2782.

[16]  If the district court does not agree with the foregoing conclusions concerning § 1927 sanctions and remands this matter to the undersigned for further consideration, Mead will be given the opportunity to be heard at an evidentiary hearing.  See Hudson v. International Computer Negotiations, Inc., 499 F.3d 1252, 1260–61 (11th Cir. 2007) (stating that "[a]n attorney under the threat of § 1927 sanctions is entitled to an evidentiary hearing.").

Mead, and Mead's law firm within the twenty-one days safe harbor period.  Failure to give the required twenty-one days notice "forecloses Rule 11 sanctions."  Macort v. Prem, Inc., 208 Fed. App'x at 786; *accord* In re: Schaefer Salt Recovery, Inc., 542 F.3d 90, 99 (3rd Cir. 2008); Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 679 (4th Cir. 2005); In re: Pratt, 524 F.3d 580, 588 (5th Cir. 2008).   Due to the procedural deficiencies described above, this court recommends that Webb's request for Rule 11 sanctions against the Roys, Mead, and Mead's law firm be denied.

Next, Webb requests that sanctions be imposed against the Roys, Mead, and Mead's law firm pursuant to the court's inherent power.  Where sanctionable conduct occurs and is discovered prior to entry of final judgment, a motion for sanctions pursuant to the court's inherent power must be filed before entry of the court's final order.  *See* Peer v. Lewis, 606 F.3d 1306, 1315 n.10 (11th Cir. 2010), citing 2 James Wm. Moore et al., Moore's Federal Practice § 11.41[6] (3d ed. 2010).  The district court's final summary judgment order and judgment in favor of Defendants were entered March 31, 2009 (Docs. 380, 381).  Webb initially filed his instant motion for sanctions on April 13, 2009 (Doc. 387).  The allegedly sanctionable conduct was discoverable prior to entry of final judgment.  Webb identifies no other earlier-filed request for sanctions pursuant to the court's inherent power in the record, nor is the court aware of any such request.  Webb's instant motion for sanctions pursuant to the court's inherent power therefore is untimely.  Accordingly, this court recommends that the motion be denied.

**Applications for Bills of Costs**

The County Defendants and Webb also seek their taxable litigation costs (Docs. 385, 386).  Mead, when he represented the Roys, voiced no opposition to the requests for costs (*see* Docs. 502, 504).  The Roys, proceeding pro se, apparently are opposed to any type of award to Defendants, including an award of costs, but they have identified no specific items to which they object (Doc. 512).

The County Defendants rely on 28 U.S.C. § 1920, Fed. R. Civ. P. 54(d)(1), and N.D. Fla. Loc. R. 54.2 in making their request for taxable costs.  Rule 54(d) provides "that costs shall be allowed as a matter of course to the prevailing party."  Title 28 U.S.C. § 1920 specifies which costs may be properly taxed against the non-prevailing party.  *See* Mathews v. Crosby, 480 F.3d 1265,

1276 (11th Cir. 2007) (noting that Rule 54(d) establishes "a strong presumption that the prevailing party will be awarded costs" not to exceed those permitted by § 1920).  Costs that may be awarded under § 1920 include: "(1) fees of the clerk and marshal; (2) fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; [and] (4) fees for exemplification and copies of papers necessarily obtained for use in the case." 28 U.S.C. § 1920(1)–(4).

Here, as noted previously, by virtue of the court's judgment entered in this case the County Defendants and Nelson are prevailing parties and therefore are entitled to costs. *See* Buckhannon Bd. and Care Home, Inc., 532 U.S. at 603.  The court has reviewed the bill of costs timely supplied by the County Defendants (*see* Doc. 385-2 at 2) and concludes the bill, which seeks only those costs enumerated under § 1920, is reasonable in light of the length and nature of the litigation.  It therefore recommends that the County Defendants' motion for costs in the amount of $10,547.92 be granted.[17]

Webb also seeks to recover costs, but not under Rule 54 or § 1920.  Rather, Webb relies on Fed. R. Civ. P. 68, Offer of Judgment.  This rule provides that a party defending against a claim may serve an offer to allow judgment on the opposing party, and if that offer is not accepted and the final judgment obtained by the offeree is not more favorable than the unaccepted offer, then the "offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d).  The record in this case reflects that Webb made an offer of judgment pursuant to Fed. R. Civ. P. 68 to the Roys on November 7, 2007, in the amount of  ten thousand dollars ($10,000.00) (Doc. 384). The Roys, obviously, did not accept Webb's offer of judgment and, ultimately, final judgment was entered in Webb's favor on March 31, 2009 (Docs. 380, 381).

Although Webb asserts that he is entitled to costs under Rule 68, the court disagrees.  The Supreme Court held, in Delta Air Lines, Inc. v. August, 450 U.S. 346, 101 S. Ct. 1146, 67 L. Ed. 2d 287 (1981), that the plain language of Rule 68 makes clear that, where a defendant has made an offer of judgment, this rule applies only to judgments obtained by the plaintiff; it simply is inapplicable

---

[17]   "[A] non-prevailing party's financial status is a factor that a district court may, but need not, consider in its award of costs pursuant to Rule 54(d)."  Chapman v. AI Transp., 229 F.3d 1012, 1039 (11th Cir. 2000).  With no evidence of the Roys' current financial status in the record, this court is unable to consider it.  Even if such information had been presented, however, with respect to the award of costs, the court would decline to consider it in this case.

to cases where the defendant obtains a judgment in his favor. *Id.* at 352. In this case, as Webb obtained a judgment in his favor, Webb is not entitled to costs under Rule 68. *See* Jones v. United Space Alliance, L.L.C., 494 F.3d 1306, 1309 (11th Cir. 2007) (noting holding in Delta that Rule 68 is inapplicable to cases where the defendant obtained judgment); Design Pallets, Inc., v. Gray Robinson, P.A., 583 F. Supp. 2d 1282, 1285 n.5 (M.D. Fla. 2008) (finding Rule 68 inapplicable to defendant's request for costs where judgment entered in defendant's favor).

The question arises whether Webb has forfeited the right to obtain his proper costs because he cited the wrong rule. As noted, under Rule 54(d), he is entitled to costs as a prevailing party, unless the court otherwise directs, with the proper measure of those costs being set forth in § 1920. There is authority for concluding that, in a situation in which a prevailing party has cited Rule 68 instead of Rule 54(d) in support of his demand for costs, the court may award that party costs under Rule 54. *See* Tidemann v. Nadler Golf Car Sales, Inc., 224 F.3d 719, 726–27 (7th Cir. 2000). This court shall follow the approach taken in Tidemann. So doing, upon review of the bill of costs supplied by Webb on the correct court form (Doc. 388),[18] in which he seeks a total of $8309.59 in costs, the court concludes that Webb's application cannot be granted.

The manner in which the forms have been filled out is confusing and not in compliance with the form's instructions (both of which failings contravene Local Rule 54.2(A)'s requirement that the requests be "so itemized that the nature of each can be readily understood"). Also, the court could not decipher how Webb reached the total amount sought of $8309.59; the amount of the "other costs" requested on page 1 is $6764.50, which presumably should be taken from pages 3, 4, and 5 of the bill, but the total for those pages is actually $6404.62. These defects could be resolved and thus need not be fatal to Webb's application. Further, however, Webb failed to provide any documentation for his claims. *See* N.D. Fla. Loc. R. 54.2 (stating that "where available, documentation of requested costs in all categories *must* be attached.") (emphasis added).

---

[18]  Webb submitted both a "Motion for Bill of Costs" (Doc. 386) and a "Supplemental Motion for Bill of Costs" (Doc. 388). The former document contains a typed list of costs sought to be recovered; the latter is submitted on the court's form. *See* N.D. Fla. Loc. R. 54.2 (stating, *inter alia*, that a party seeking costs shall file "a bill of costs on a form provided by the Clerk . . . .").

The requests for costs of $170.00 for printed transcripts fees and $53.00 for printing fees appear to be reasonable and generally are permissible, but—unfortunately—without any documentation in support the court concludes there is no basis for granting them.  Aside from (or in addition to) the problem of lack of documentation, the court concludes that the remainder of the application should be denied because the costs requested are not recoverable under § 1920.  Specifically, Webb—while (improperly) using the Witness Fees form for this purpose—apparently requests attorney attendance time at depositions and deposition room rental (*see* Doc. 388 at 1–3).  As neither is available under § 1920, the requested amount of $1322.09 (*id.* at 1, 2) is not allowable.  Likewise, the amount of $3774.75 (*id.* at 3) sought for attendance and subsistence costs connected with the "Deposition of Plaintiffs & transcripts" should not be permitted; without documentation, the court cannot determine if the transcript costs might be recoverable or, if so, in what amount—and the other costs are not recoverable.  Moreover, neither research costs ($87.77) nor travel expenses are recoverable under § 1920 (total $1952.36) (*id.* at 3–4).  The court is also unable to determine a basis for awarding costs for the "Beardon, B. Bowman, and K. Hargett's depositions," and thus concludes that the amount of $292.91 is not allowable (*id.* at 4).  Finally, mediation costs ($875.00) are not recoverable under § 1920.

For all of the foregoing reasons, the court recommends that Webb's application for costs (Docs. 386, 388) be denied.[19]

Accordingly, it is **ORDERED**:

1.      The Roys' motion for leave to file a reply (Doc. 530) is **DENIED.**

2.      The motions for attorneys' fees and nontaxable expenses found at Document ## 387 and 390 are treated as active motions for the purpose of this Report and Recommendation by virtue of the renewal notices found, respectively, at Document ## 485 and 496.  Similarly, the motions (applications) for costs found at Document ## 385 and 386/388 are treated as active motions for

---

[19]  The court recognizes that in its order of April 12, 2011 (Doc. 501), it indicated that, in the absence of any opposition to the applications for costs, it intended to recommend that the Defendants' requested costs be awarded.  At that time, however, the Roys had voiced no opposition to an award of costs, and the court had not scrutinized the applications to the extent it has above.  Rather, at that time the court anticipated that Webb's application would be routinely approved, as is true in the vast majority of unopposed applications for costs.

purpose of this Report and Recommendation by virtue of the renewal notices found, respectively, at Document ## 496 and 485.

And it is respectfully **RECOMMENDED** that:

1.      The Roys' motion to reopen (Doc. 515) be **DENIED**.

2.      The "Verified Motion to Tax Costs, Fees, and Sanctions & Memoranda of Law" (Doc. 387), filed by Webb, be **GRANTED in part and DENIED in part**, as follows:

The motion should be **GRANTED** with respect to the request for fees pursuant to 42 U.S.C. § 1988 and **DENIED** in all other respects.

3.      The "Motion for Attorneys' Fees and Related Nontaxable Expenses" (Doc. 390), filed by the County Defendants and Nelson, be **GRANTED in part and DENIED in part**, as follows:

The motion should be **GRANTED** with respect to the requests for fees pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 3613(c)(2) and **DENIED** in all other respects.

4.      If the district court adopts the undersigned's recommendation that the Roys be found liable for attorneys' fees and nontaxable costs under 42 U.S.C. § 1988 and 42 U.S.C. § 3613(c)(2), the parties shall immediately commence complying with N.D. Fla. Loc. R. 54.1(E) to determine the amount of fees and nontaxable costs to be awarded. The clerk shall refer the parties' submissions to the undersigned.

5.      The motion (application) for taxable costs in the amount of $10,547.92 (Doc. 385), filed by the County Defendants, be **GRANTED**, and this matter be referred to the clerk of court for disposition.

6.      The motions (applications) for costs (Docs. 386, 388), filed by Webb, be **DENIED**. At Pensacola, Florida this 27th day of September 2011.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control**.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).